677 So.2d 314 (1996)
Bruce P. VAN WAGNER, Appellant,
v.
STATE of Florida, Appellee.
No. 95-1375.
District Court of Appeal of Florida, First District.
April 12, 1996.
*315 Nancy A. Daniels, Public Defender; Jamie Spivey, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Trisha E. Meggs and Amelia L. Beisner, Assistant Attorneys General, Tallahassee, for Appellee.
BENTON, Judge.
Bruce P. Van Wagner appeals the trial court's decision finding him guilty of willful and substantial violations of the terms of his probation; and also contends that the sentence pronounced after revocation of probation was unlawful. We reverse the order revoking appellant's probation, which renders the sentencing issue moot.
After serving time in prison for trafficking in cocaine, appellant began a probationary term that was interrupted when he was rejailed on the filing of an initial affidavit alleging a violation of probation. Kimber Glesenkamp, a probation officer in Pinellas County, supervised him till the rejailing. While he was released on his own recognizance pending the hearing on the initial affidavit, he was under the supervision of Jeff Hogan, a probation officer in Columbia County. At the hearing on the initial affidavit, appellant's probationary term was extended until January 19, 1999, and he was again released on probation.
A second affidavit of violation of probation, filed December 27, 1994, framed the issues that were decided in the order under review. This affidavit alleged that appellant violated conditions of his (extended) probation because he "did not provide a verifiable residence to Correctional Probation Officer Kimber Glesenkamp of the Pasadena Probation and Parole Office in Pinellas County, Florida," in violation of condition three;[1] and "in that ... Kimber Glesenkamp ... instructed [appellant] to contact Aaron Roberts in the Lake City Probation Office immediately, and, as of ... December 13, 1994, [appellant] ha[d] neglected [to] contact this officer, and his whereabouts [we]re unknown," in violation of condition eight.[2] (Aaron Roberts, a probation officer in Columbia County, drafted, signed, and filed the affidavit.)
At the revocation hearing, appellant testified that he lost both his apartment and his job when he was jailed (before his release on his own recognizance) pending the hearing at which his probation was extended. He also testified that, before he left the courtroom on the day his probation was extended, he spoke to Mr. Hogan, the probation officer in Lake City who had supervised him while he was released on his own recognizance. *316 (Mr. Hogan did not testify at the revocation hearing.) According to appellant, Mr. Hogan, who allegedly knew appellant was from St. Petersburg and that he had been supervised there before his rejailing, told him to contact his "regular probation officer." Mr. Van Wagner testified that he took that to mean Ms. Glesenkamp, whom he contacted promptly upon his arrival in St. Petersburg, some two weeks after extension of his probation.
Mr. Van Wagner testified that he informed Ms. Glesenkamp where he was living as soon as he acquired a new place to live early in January of 1995, but that by then (unbeknownst to him) the second affidavit of violation of probation had already been filed. He acknowledged that Ms. Glesenkamp instructed him to contact Aaron Roberts in Lake City. He testified that he was unable to comply with this instruction because collect calls to the Lake City probation office were refused, and he had no money and no telephone from which to make long-distance calls until early in January of 1995. He also testified that he made several collect calls to a friend in Lake City, Polly Johnson, in an effort to contact Mr. Roberts through her.
Appellant's testimony was unrebutted in all material respects. Mr. Roberts testified that, although he never had direct contact with Mr. Van Wagner, he received telephone calls from Kimber Glesenkamp reporting that appellant had contacted her and was in St. Petersburg. Mr. Roberts also testified that Polly Johnson made several attempts to reach him at the probation office, but that by the time he and Ms. Johnson spoke to each other in January of 1995, the violation affidavit had been filed and the arrest warrant had issued.
Ms. Glesenkamp testified that Mr. Van Wagner contacted her on November 30, 1994, and told her he had been "transferred" to St. Petersburg. Finding no "transfer paperwork," she testified she telephoned the Lake City probation office and made inquiry. She also testified that she instructed appellant on several occasions to contact Aaron Roberts in Lake City, but she conceded that appellant explained to her his difficulty in getting in touch with Mr. Roberts, and she confirmed that the Lake City probation office would not accept collect calls.
In response to requests for a definite home address, Ms. Glesenkamp testified, appellant first told her he had no residence or stable employment and was going from job to job and place to place, working and staying with friends. But she testified that, on January 11, 1995, appellant came to her office and provided an address.[3] She did not testify that she withheld consent for any change of residence.
Revocation of probation is appropriate when a probationer violates "his probation... in a material respect." § 948.06(3), Fla.Stat.(1995). While it has been said that a "trial court has the inherent power to revoke probation for misconduct which demonstrates the probationer's unfitness for probation." Washington v. State, 579 So.2d 400, 401 (Fla. 5th DCA 1991), most cases reflect the view that "[p]robation may be revoked only upon a showing that the probationer deliberately and willfully violated one or more conditions of probation." Steiner v. State, 604 So.2d 1265, 1267 (Fla. 4th DCA 1992). We do not, in any event, believe the second affidavit alleges misconduct demonstrating appellant's unfitness for probation.
To establish a violation of probation, the prosecution must prove by a preponderance of the evidence that a probationer willfully violated a substantial condition of probation. Salzano v. State, 664 So.2d 23 (Fla. 2d DCA 1995); Thorpe v. State, 642 So.2d 629, 629 (Fla. 1st DCA 1994) ("Where a probationer has made reasonable efforts to comply with the terms of probation, his or her failure to do so has been held not to be willful."). See also Washington v. State, 667 So.2d 255 (Fla. 1st DCA 1995) (finding no "willful and substantial" violation of probation); Carter v. State, 659 So.2d 453 (Fla. 4th DCA 1995) (same); Green v. State, 620 So.2d 1126 (Fla. 1st DCA 1993) (unemployed probationer *317 unable to make restitution not guilty of willful violation); White v. State, 619 So.2d 429, 431 (Fla. 1st DCA), review denied, 626 So.2d 208 (Fla.1993) (probationer who failed to perform community service had reported "to the community service worksite many times").
"Any violation triggering a revocation of probation must be `willful' and `substantial,' Young v. State, 566 So.2d 69, 70 (Fla. 2d DCA 1990)." Rainer v. State, 657 So.2d 1230, 1230 (Fla. 4th DCA 1995) (failure to complete drug rehabilitation program not shown to be willful); Bell v. State, 643 So.2d 674 (Fla. 1st DCA 1994); Kolovrat v. State, 574 So.2d 294 (Fla. 5th DCA 1991) (unemployed probationer's failure to make restitution not shown to be willful); Drayton v. State, 490 So.2d 229, 230 (Fla. 2d DCA 1986) ("no evidence from which the trial court could properly conclude that appellant had the ability to file the monthly report but willfully failed to do so").
Where a probationer makes reasonable efforts to comply with a condition of probation, violation of the condition cannot be deemed "willful." Thorpe; Stevens v. State, 599 So.2d 254 (Fla. 3d DCA 1992) (probationer's unsuccessful, "quixotic and inept" attempt to attend classes for sex offenders precluded finding of willful violation of probationary term requiring attendance); Jacobsen v. State, 536 So.2d 373 (Fla. 2d DCA 1988) (defendant's failure to leave county by a specified time not grounds for revocation when he made reasonable efforts to comply); Shaw v. State, 391 So.2d 754 (Fla. 5th DCA 1980) (no willful violation of condition requiring personal delivery of a report when timely completed report was not delivered because of probationer's lack of transportation and subsequent incarceration for an unrelated offense); Gardner v. State, 365 So.2d 1053 (Fla. 4th DCA 1978) (no willful violation of condition that probationer leave Florida proven because his car broke down).
A "trial court has broad discretion to determine whether a term of probation has been violated...." Harris v. State, 610 So.2d 36, 37 (Fla. 2d DCA 1992). "The standard of review for probation revocation orders is whether the trial court abused its discretion. Steiner v. State, 604 So.2d 1265, 1267 (Fla. 4th DCA 1992.)" Bell v. State, 643 So.2d 674, 675 (Fla. 1st DCA 1994). On this record, however, we conclude the trial court did abuse its discretion because the record does not support a finding that any violation was willful and substantial. Harris; Hightower v. State, 529 So.2d 726, 727 (Fla. 2d DCA 1988).
The evidence does not establish appellant's willful noncompliance with Ms. Glesenkamp's instructions. Through Ms. Johnson, he made repeated, although unsuccessful, attempts to establish communication with Mr. Roberts prior to the filing of the affidavit of violation of probation. While for a time he had no fixed abode and no address to give, he did not withhold information he had from Ms. Glesenkamp. Nor was it shown that he made any change of residence without her consent. Appellant's penury, homelessness, and unemployment were not intentional, as far as the record shows.
Accordingly, the order revoking probation is reversed, and the sentence imposed after revocation is vacated.
JOANOS and VAN NORTWICK, JJ., concur.
NOTES
[1] Condition three provides:

(3) You will not change your residence or employment or leave the county of your residence without first procuring the consent of your probation officer.
[2] Condition eight provides:

(8) You will promptly and truthfully answer all inquiries directed to you by the Court or the probation officer, and allow the Officer to visit in your home, at your employment site or elsewhere, and you will comply with all instructions he/she may give you.
[3] Van Wagner gave his address as "around one hundred and thirty-seventhish Madeira Beach behind the candy store." From his description, Ms. Glesenkamp found the building in which he lived without difficulty.