25 So.3d 554 (2010)
J.A.B., Petitioner,
v.
STATE of Florida, Respondent.
No. SC08-2326.
Supreme Court of Florida.
January 7, 2010.
*555 James Marion Moorman, Public Defender, and Pamela H. Izakowitz, Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, Robert J. Krauss, Bureau Chief, and Diana K. Bock, Assistant Attorneys General, Tampa, FL, for Respondent.
PARIENTE, J.
This case is before the Court for review of the en banc decision of the Second District Court of Appeal in J.A.B. v. State, 993 So.2d 1150 (Fla. 2d DCA 2008), addressing the issue of juvenile restitution. The Second District certified conflict with the decision of the First District Court of Appeal in J.A.M. v. State, 601 So.2d 278 (Fla. 1st DCA 1992), on the issue of whether setting the commencement date for restitution must be conditioned on the juvenile obtaining employment. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
In receding from several of its own prior decisions, the Second District explained:
[W]e now hold that the trial court may set the restitution amount and payments in a reasonable amount based upon evidence regarding the earnings the juvenile may reasonably be expected to make and may set a commencement date for the payments so long as the court provides a reasonable amount of time for the juvenile to obtain employment.
J.A.B., 993 So.2d at 1151. Because this holding comports with the language and stated purpose of the applicable juvenile restitution statutes, we approve the opinion of the Second District in J.A.B. and disapprove J.A.M. to the extent that the First District has required that setting a commencement date for restitution be conditioned on the juvenile obtaining employment.

FACTS AND BACKGROUND
J.A.B. was adjudicated guilty of battery and placed on juvenile probation for one year. Id. The trial court reserved jurisdiction to determine restitution and held evidentiary hearings during which the victim testified that she had incurred hospital bills and other losses as a result of the battery. Id. Although J.A.B. was seventeen at the time she committed the battery, she was eighteen by the time of the evidentiary hearing. See id. J.A.B. testified she was unemployed and pregnant, she attended high school, and hoped to proceed to a two-year trade school. Id. Further, as set forth in the Second District's opinion:
She planned to take six weeks off from her schooling after the baby was born. She had never held a job before, although she had applied unsuccessfully at three companies when she was approximately five months pregnant. She had no disability or health conditions that would prevent her from working once she had the baby. The court questioned the parties regarding the current minimum wage. The State responded that the federal minimum wage was $5.15 per *556 hour, and the state minimum wage was $6.67.
J.A.B. was living with her expected baby's grandmother (apparently the paternal grandmother) but received no support from the expected baby's father. She was receiving government assistance in the form of $180 per month in cash assistance plus food stamps. She also had a cell phone with a bill of approximately $60 per month that was paid by her mother or her uncle.
Based upon this evidence, the trial court awarded restitution in the amount of $1479.09. Given that J.A.B.'s baby was due within two months, the court deferred any payment of restitution until July 1, 2007, approximately six weeks after J.A.B.'s due date. The court required J.A.B. to then pay restitution at the rate of $50 per month, reasoning that this amount could be paid given the resources available to J.A.B. even if J.A.B. worked only part time at minimum wage.
Id. at 1151-52 (footnote omitted). J.A.B. appealed the restitution order, not challenging the amount of restitution, but instead arguing that the trial court abused its discretion in setting the payment schedule because she could not afford the payments. Id. at 1152. The Second District disagreed. Id.
Taking into consideration the language of the juvenile restitution statute, the policies underlying the statute, and the wide discretion generally afforded to trial courts in awarding restitution, the Second District concluded that trial courts should be permitted to set a restitution payment schedule, even where the juvenile is unemployed. Id. at 1154. In reaching this conclusion, the Second District recognized that although a court can order a delinquent juvenile to pay restitution without a showing of present ability to pay, "the court must determine what the child may reasonably be expected to earn upon finding suitable employment and must base the restitution amount on those expected earnings." Id. at 1152; see also § 985.231(1)(a)(1)(a), Fla. Stat. (2005). Further, the Second District determined that there is nothing in section 985.231 that requires a trial court to condition the setting of a restitution payment schedule on the juvenile obtaining employment. J.A.B., 993 So.2d at 1153. The Second District also noted that an order requiring restitution only after a juvenile finds employment places the onus on the State to continually pursue a child who has not paid. Id. at 1154. The question of inability to pay despite reasonable efforts to do so would be an issue in any subsequent enforcement proceedings. Id. at 1151, 1154.
Finally, the Second District took note of the evidence supporting the trial court's restitution order, including J.A.B.'s age, the fact that J.A.B. did not suffer from any disability, her intent to return to school six weeks after having her child, her lack of significant living expenses, her receipt of government assistance, and her monthly cell phone bill, which was paid by a family member, in excess of the amount of restitution payments. Id. Based on this evidence, the district court concluded that the trial court did not abuse its discretion in entering its restitution order. Id.
In J.A.M., the conflict case, the juvenile appealed a condition of his community control requiring him to make restitution in the amount of $3800 to the victim at the rate of $200 per month commencing on a date certain. 601 So.2d at 278. On appeal, he argued that the trial court erred in failing to determine that he had the present ability to pay the ordered restitution at the amount required. Id. The First District noted that a trial court may order *557 an unemployed or incarcerated child to pay restitution without a showing of present ability to pay and in doing so, "must only determine what the defendant may reasonably be expected to earn upon finding suitable employment and base the amount of restitution on those earnings." Id. However, the First District concluded that even though the amount of restitution imposed did not appear to exceed the amount the juvenile could reasonably be expected to pay or make, the trial court erred in setting a date certain for commencement of the payment. Id. at 278-79. The case was remanded for the trial court to strike the date certain and substitute language providing that the payments were to commence upon the juvenile's obtaining employment, which he was required to make all reasonable efforts to obtain. Id. at 279.

ANALYSIS
The certified conflict issue before this Court asks whether a trial court may set a restitution payment schedule for an unemployed juvenile or whether the trial court must condition payment of restitution upon the juvenile becoming employed.[1] Because the subject of restitution is a creature of statute, resolving this question requires an analysis of the language of the statute to discern legislative intent. In analyzing this issue, we first set forth the applicable statutory provisions. We then review the language and stated purpose of the restitution statute to determine whether the Legislature intended to afford trial courts discretion in setting a restitution payment schedule even if the juvenile is currently unemployed.
Questions of statutory interpretation are subject to de novo review. Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 194 (Fla.2007). "As with any case of statutory construction, we begin with the `actual language in the statute.'" Id. at 198 (quoting Borden v. East-European Ins. Co., 921 So.2d 587, 595 (Fla.2006)). "This is because legislative intent is determined primarily from the statute's text." Id. (citing Maggio v. Fla. Dep't of Labor & Employment Sec., 899 So.2d 1074, 1076-77 (Fla.2005)).
Chapter 985, Florida Statutes (2005), entitled "Delinquency; Interstate Compact on Juveniles," was enacted in 1997 by the Florida Legislature. See ch. 97-238, Laws of Fla. The statute provides in part as follows: "When restitution is ordered by the court, the amount of restitution may not exceed an amount the child and the parent or guardian could reasonably be expected to pay or make." § 985.231(1)(a)(1)(a) (2005) (emphasis added). Nearly identical language was contained in the juvenile restitution statute in existence at the time of J.A.M.'s offense.[2] *558 Likewise, section 985.437(2), Florida Statutes (2009), provides in pertinent part: "When restitution is ordered by the court, the amount of restitution may not exceed an amount the child and the parent or guardian could reasonably be expected to pay or make." (emphasis added).[3]
The Legislature has also stated the purpose of chapter 985 in relevant part:
(c) To ensure the protection of society, by providing for a comprehensive standardized assessment of the child's needs so that the most appropriate control, discipline, punishment, and treatment can be administered consistent with the seriousness of the act committed, the community's long-term need for public safety, the prior record of the child, and the specific rehabilitation needs of the child, while also providing whenever possible restitution to the victim of the offense.

§ 985.01(1)(c), Fla. Stat. (2005) (emphasis added); see also § 985.01(1)(c), Fla. Stat. (2009) (same). To fulfill the goal of providing restitution to the victim "whenever possible," the Legislature has set forth a clear procedure for trial courts to follow in ordering restitution from a minor.
Once a juvenile is adjudicated delinquent and if the trial court places the juvenile on probation, a probation program "must include a penalty component such as restitution in money or in kind." § 985.231(1)(a)(1), Fla. Stat. (2005);[4]see also § 985.435(2)(a), Fla. Stat. (2009). The court may order the child to "make restitution in money, through a promissory note cosigned by a child's parent or guardian, or in kind for any damage or loss caused by the child's offense in a reasonable amount or manner to be determined by the court." § 985.231(1)(a)(6), Fla. Stat. (2005); see also § 985.437(2), Fla. Stat. (2009) (same).
The issue in this case is whether the statute prohibits setting a date certain for restitution payments to begin and, if not, whether the setting of a date certain is inconsistent with the statute's requirement that the amount of restitution ordered is an amount that "the child and the parent or guardian could reasonably be expected to pay or make." § 985.231(1)(a)(1)(a), Fla. Stat. (2005) (emphasis added); see also § 985.437(2), Fla. Stat. (2009).
We conclude that the statute does not prohibit setting a date certain for restitution payments to begin. Rather, the operative language of the statute"reasonably expected to pay or make"appears to contemplate that restitution will be set based on what a juvenile could be reasonably expected to pay upon finding employment, not on the juvenile's current ability to pay. Thus, provided the ordered restitution amount does not exceed an amount that the child and the parent could reasonably be expected to pay or make, the trial court may order that the payments begin on a date certainwithout *559 regard to the juvenile's present employment status.
The Legislature's purpose in drafting the juvenile restitution statute, as specifically set forth in section 985.01(1)(c), also supports the conclusion of the Second District that trial courts may set a payment schedule regardless of the present employment status of the juvenile. The statute was crafted both to protect society in a manner consistent with the child's needs and to provide restitution to the victim whenever possible. See § 985.01(1)(c). This purpose is best served by allowing the trial court discretion in setting the payment schedule. As noted by the Fourth District Court of Appeal, "`[t]he purpose of restitution is not only to compensate the victim, but also to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system. The trial court is best able to determine how imposing restitution may best serve those goals in each case.'" J.K. v. State, 695 So.2d 868, 869 (Fla. 4th DCA 1997) (quoting State v. Hawthorne, 573 So.2d 330, 333 (Fla.1991)). Further, as the Second District recognized in J.A.B.:
An order requiring payment of restitution only after the juvenile obtains employment is difficult to enforce and places the onus on the State to continue to pursue the child if payment is not forthcoming. The child is left with no feeling of urgency to comply with the restitution provisions, while the victim is left uncompensated.
993 So.2d at 1154.
We wholeheartedly support the interest that J.A.B. has expressed in being able to pursue her educational goals. However, in this case, the court's restitution order did not require J.A.B. to abandon her education to comply with the payment schedule. The court based the order of restitution on a part-time work schedule at the minimum wage, which provided J.A.B. the opportunity to finish her high school education, pursue higher education, and compensate the victim of her crime through part-time employment. Indeed, the $50 monthly restitution amount was less than J.A.B.'s monthly cell phone bill.
We are certainly mindful of the challenges that a juvenile such as J.A.B. may encounter in attempting to find employment, even at the minimum wage, and considering the fact of her pregnancy and then motherhood, her lack of employment history, and her limited education.[5] We conclude, however, that *560 nothing in the juvenile restitution statute requires a trial court to condition the setting of a restitution payment schedule on the juvenile obtaining employment. It is appropriate for a trial court to set a restitution amount and payment schedule based on the expectation of employmentwhat the juvenile can reasonably be expected to pay or make upon finding suitable employment. As stated by the Second District:
Given the language of the juvenile restitution statute, the policies underpinning the statute, and the wide discretion generally afforded to judges in awarding restitution, we now conclude that a hard-and-fast rule prohibiting a judge from setting a commencement date for monthly payments of juvenile restitution and requiring that such payments can only be ordered contingent upon the juvenile actually obtaining employment is inappropriate.
J.A.B., 993 So.2d at 1154.
We note, however, that in any subsequent enforcement proceeding brought by the State, the prosecution would have to prove that the "`probationer willfully violated a substantial condition of probation.'" E.P. v. State, 901 So.2d 193, 195 (Fla. 4th DCA 2005) (quoting Van Wagner v. State, 677 So.2d 314, 316 (Fla. 1st DCA 1996)). Therefore, at the time when the State seeks enforcement, the issue becomes whether the juvenile has the ability to pay the amount of restitution ordered. At that time, the juvenile's inability to find employment despite reasonable efforts to do so would also be relevant.[6]

CONCLUSION
Based on our analysis, we approve the Second District's decision in J.A.B. and disapprove the decision of the First District in J.A.M. to the extent that the First District has required that a commencement date for restitution be conditioned on the juvenile obtaining employment.
It is so ordered.
QUINCE, C.J., and LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
NOTES
[1] J.A.B. also argues that the trial court erred in setting the amount and terms of the payment schedule for restitution based on J.A.B.'s specific circumstances, specifically asserting that the trial court erred because there was no evidence presented about what J.A.B. could reasonably be expected to make and because it determined J.A.B.'s ability to pay based on the trial judge's personal experience. We decline to reach these issues because they are outside the scope of the certified conflict and because they are not addressed in the Second District's opinion.
[2] The statute in existence at the time of J.A.M.'s offense provided in relevant part: "When restitution is ordered by the court, the amount of restitution shall not exceed an amount the child and his parents could reasonably be expected to pay or make." § 39.054(1)(a)(2), Fla. Stat. (Supp.1990) (emphasis added). This provision was added by the Legislature in 1990 and was relied upon by J.A.M., although the citation in the case is to section 39.054(1)(a)(2), Florida Statutes (1989), instead of to the 1990 supplement.
[3] The language of the operative provision has changed slightly since the 1990 statute at issue in J.A.M. The 2005 statute at issue in the instant case and the current 2009 statute both provide that the "the amount of restitution may not exceed," § 985.231(1)(a)(1)(a), Fla. Stat. (2005) (emphasis added); § 985.437(2), Fla. Stat. (2009) (emphasis added), instead of "shall not exceed." § 39.054(1)(a)(2), Fla. Stat. (Supp.1990) (emphasis added). However, this distinction is of no import. Other distinctions between the entirety of section 39.054, Florida Statutes (Supp.1990), and sections 985.231, Florida Statutes (2005), and 985.435, Florida Statutes (2009), also do not affect this analysis.
[4] Section 985.231, which was in effect at the time J.A.B. committed the battery, has been amended and renumbered as sections 985.435, 985.437, 985.445, 985.45, 985.455, 985.475, and 985.513. See ch. 2006-120, §§ 46-47, 51-53, 57, 65, Laws of Fla.
[5] While lack of employment history and a juvenile record present a very real obstacle to a juvenile obtaining employment, community programs have helped to address these issues while fostering a sense of responsibility on the part of the juvenile. For example, the Ninth Judicial Circuit, serving Orange and Osceola Counties, in partnership with Goodwill Industries, sponsors The Pay Up Program, with the goal of holding juveniles "accountable for their actions by ensuring they compensate their victims for losses suffered as the result of a juvenile crime." See Pay Up Program, http://www.ninja9.org/courts/juvenile/payup.htm (last visited Dec. 31, 2009). Juveniles ages 16 to 18 years old are provided work ethics and employability training. The juveniles are closely monitored and once they obtain jobs, a minimum of 50% of their wages goes towards their restitution until the victims are paid in full. The 10- to 15-year-olds in the program, who are too young to work, are assigned community service work and the victim is compensated $5.15 for every hour worked by the juvenile. Id. Similarly, Project Payback requires juvenile offenders who cannot obtain employment to complete community restitution service hours at an approved site. For every verified hour of service that the juvenile completes, Project Payback will forward the minimum wage to the victim. The program is currently active in Alachua, Baker, Bradford, Gilchrist, Levy, and Union counties. See Project Payback, http://sawww. co.alachua.fl.us/Payback/Default.htm (last visited Dec. 31, 2009).
[6] The issue of the burden of proof in enforcement proceedings in juvenile delinquency cases is not before us. The Second District, in the context of adult restitution, has held that the State has the burden of proving that the defendant had the ability to pay and willfully failed to do so. See Blackwelder v. State, 902 So.2d 905, 907 (Fla. 2d DCA 2005). To the extent there is a conflict in the district courts as to who bears the burden of proof in the adult context, see Del Valle v. State, 994 So.2d 425 (Fla. 3d DCA 2008), that conflict issue is presently before this Court in Del Valle v. State, No. SC08-2001, 2009 WL 4401210 (Fla. oral argument held Oct. 7, 2009).