946 So.2d 583 (2006)
Kenneth ADAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-4488.
District Court of Appeal of Florida, Fourth District.
December 20, 2006.
Rehearing Denied January 30, 2007.
*584 Carey Haughwout, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.
SHAHOOD, J.
Kenneth Adams appeals the disposition order of the trial court revoking his probation. We find no merit in Adams's argument that the trial court erred in revoking his probation where there was no time period specified for him to complete sex offender treatment. We affirm.
Adams originally pled guilty to one count of lewd or lascivious molestation and one count of lewd or lascivious exhibition. He was placed on two years community control followed by three years of sex offender probation. The State subsequently filed an affidavit of violation of probation. The court revoked the community control and probation and placed Adams on six years of sex offender probation with the condition he serve 364 days in jail. Adams served the jail time and was released into probation. One of the standard conditions of Adams's sex offender probation required him to enter and successfully complete a sex offender treatment program at his own expense. On August 1, 2005, the State filed an affidavit of violation of probation alleging Adams violated probation by failing to fulfill this condition.
A violation of probation hearing was held on September 12, 2005. Adams's probation officer, Officer Jenkins, testified that Adams was instructed on the conditions of his sex offender probation on two separate occasions. Adams told Jenkins he had started working at a car wash about three weeks prior to the time the affidavit of violation was filed. Adams said he was working six or seven days a week. Adams told Jenkins he was going to counseling. Adams never told Jenkins he could not afford the costs of his sex offender counseling. When he got arrested, Adams told Jenkins that "he just didn't have the money and he just didn't go."
Dr. William C. Rambo runs the sex offender treatment program at Fifth Street Counseling Center, where Adams was referred from the Department of Corrections. Dr. Rambo testified he first met Adams on July 2, 2005, when Adams came for an initial intake appointment. Adams was made aware of the program fees at that time. Dr. Rambo testified Adams was made aware that if he could not pay the $50 initial intake fee at that time, Dr. Rambo would work with him. Dr. Rambo told Adams that the session fee would be $25 per session for the first two months, and the fee might increase to $35 after that. Adams indicated he had income, and Dr. Rambo saw no reason that Adams would be unable to pay. Dr. Rambo told Adams that he would be given some time to get his first paycheck and get on his feet financially.
Adams attended his first scheduled group session on July 9, 2005. The second session Adams was scheduled to attend was to be held on July 16th. Adams called and left Dr. Rambo a message saying he had to work that day and would be unable to attend. Adams did not call and he failed to show up for the July 23rd session and the July 30th session. At that point, Dr. Rambo issued a termination letter to Officer Jenkins pursuant to the program policy regarding two unexcused absences. The letter stated that Adams was terminated for noncompliance with the treatment program.
Dr. Rambo testified that Adams never contacted him or indicated to him that he *585 could not afford the program fees. Dr. Rambo further stated that if Adams had done so Adams would not have been terminated from the program because Dr. Rambo does not terminate anyone for inability to pay. Dr. Rambo believed Adams was aware he would not be terminated for inability to pay, because Dr. Rambo gives all new intakes this instruction when he first meets them.
Adams testified that he worked about fifteen days at the car wash during the months of June and July and earned approximately $635. Adams was aware that one of the conditions of his probation was that he enter and complete the sex offender treatment program. He claimed that Dr. Rambo informed him of the fee schedule, but did not tell him that he could go to the program without paying. Adams never told Dr. Rambo that he could not afford to pay the fee. Adams stated he went to the program twice, and did not pay either time. When asked why he did not continue going to the treatment sessions, Adams responded that he did not feel he had the money and he was unsure how he would have been treated. Adams stated at the revocation of probation hearing that he wanted to continue with the treatment program and probation.
The trial court found that Adams had violated his probation by failing to actively participate in and successfully complete a sex offender treatment program. The court also found that Adams had the ability to pay the costs of treatment. The court specifically declined to make a finding on whether Adams was told he could attend treatment without paying. The court found the violation willful and substantial. The court sentenced Adams to eleven years in prison followed by ten years of sex offender probation.
Adams claims the trial court abused its discretion by revoking his probation because the probation order did not specify a time period for completion of the program or how many chances he had to complete it. We clarify at the outset that the trial court revoked Adams's probation based upon failure to attend and complete sex offender treatment, not failure to pay. Adams merely cited inability to pay as a reason why he did not attend treatment. This distinction separates this case from those in which probation is revoked for failure to pay court-ordered costs. See, e.g., Stephens v. State, 630 So.2d 1090 (Fla. 1994); Blackwelder v. State, 902 So.2d 905 (Fla. 2d DCA 2005); Osta v. State, 880 So.2d 804 (Fla. 5th DCA 2004).
"It is well settled that `[p]robation may be revoked only upon a showing that the probationer deliberately and willfully violated one or more conditions of probation.'" Williams v. State, 896 So.2d 805, 806 (Fla. 4th DCA 2005) (quoting Steiner v. State, 604 So.2d 1265, 1267 (Fla. 4th DCA 1992)). The State must prove by the greater weight of the evidence that the probationer substantially violated a condition of probation. Blackshear v. State, 771 So.2d 1199, 1200 (Fla. 4th DCA 2000). Appellate courts should reverse a revocation of probation only if it is shown that the trial court abused its discretion. Stanley v. State, 922 So.2d 411, 413 (Fla. 5th DCA 2006); Bernhardt v. State, 288 So.2d 490, 501 (Fla.1974).
We find the facts of this case very similar to Mills v. State, 840 So.2d 464 (Fla. 4th DCA 2003). In Mills, a condition of Mills's sex offender probation was that he complete a sex offender treatment program. 840 So.2d at 465. Mills was terminated from the treatment program due to multiple unexcused absences and lack of participation. Id. at 465-66. The trial court found that Mills had willfully and substantially violated the conditions of his *586 probation by failing to complete the program. Id. at 466.
Like Adams, Mills argued on appeal before this court that the trial court erred in revoking his probation because of the absence of a specific time period within which he was to complete the program. Id. at 467. Although it found the issue unpreserved, this court specifically addressed and rejected Mills's argument. Id. (citing Archer v. State, 604 So.2d 561, 563 (Fla. 1st DCA 1992) (rejecting argument that no violation of probation occurred because court had not assigned a specific time period for probationer to complete therapy)).
We distinguish the facts of this case from the recent opinion of this court in Myers v. State, 931 So.2d 1069 (Fla. 4th DCA 2006). The probationer, Myers, had his probation revoked for failing to attend two treatment sessions. 931 So.2d at 1070-71. Myers had attended sex offender treatment for over six years. Id. at 1071. The location of the facility required Myers to ride his bicycle two hours to reach it. Id. at 1070. Myers's probation officer gave him permission to switch to a program located closer to his home. Id. The doctor from the original program informed the probation office he objected to allowing Myers to switch programs, and Myers was instructed to return to the original program. Id. Myers missed two classes because he had already paid to attend the new treatment program and did not have the dues to pay to return to the initial program. Id. at 1071. This court stressed the unique facts of that case, noting that "Myers' probation officer initially gave him permission to change programs and thus led a probationer with limited means to spend money on a program which he ultimately was not permitted to attend, leaving no funds for him to attend the required program." Id. This court concluded that the trial court had abused its discretion under the unique circumstances of that case. Id.
Myers is unique in that the probation officer essentially led Myers to violate his probation. Unlike Myers, the present case involved no confusion or transfer back and forth between two different treatment programs. There was competent testimony that Adams had the resources to pay for his treatment, was aware he would be accommodated if he could not pay, and simply failed to attend. There was sufficient evidence for the trial court to find by a preponderance of the evidence that Adams willfully and substantially violated his probation.
Affirmed.
STONE and HAZOURI, JJ., concur.