979 So.2d 921 (2008)
Kenneth ADAMS, Petitioner,
v.
STATE of Florida, Respondent.
No. SC07-389.
Supreme Court of Florida.
March 27, 2008.
*922 Carey Haughwout, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, and Celia A. Terenzio and Georgina Jimenez-Orosa, Assistant Attorneys General, West Palm Beach, FL, for Respondent.
CANTERO, J.
In this case, we decide an issue involving sex offender probation. Many probation orders require a defendant to undergo sex offender treatment, but they do not specify either a deadline for completing it or the consequences for failing to complete the treatment on the first attempt. We must decide whether in such cases, when the defendant enrolls in but fails to complete sex offender treatment, and the probationary period has not expired (thus presumably allowing the defendant to re-enroll in the program), a trial court abuses its discretion in finding the defendant in violation of probation. We review Adams v. State, 946 So.2d 583, 585 (Fla. 4th DCA 2006), which held that such a finding was not an abuse of discretion. Adams conflicts with decisions of the Second District Court of Appeal holding that, under such circumstances, revoking probation does constitute an abuse of discretion. See Mitchell v. State, 871 So.2d 1040 (Fla. 2d DCA 2004), review dismissed, 911 So.2d 93 (Fla.2005); Gessner v. State, 890 So.2d 565, 566 (Fla. 2d DCA 2005). We have jurisdiction, see art. V, § 3(b)(3), and accepted review to resolve the conflict. See Adams v. State, 963 So.2d 702 (Fla.2007) (accepting review).
We hold that, even where the probation order does not specify a deadline for completing a sex offender program or how many attempts the probationer has to complete it, where a defendant enrolls in but fails to complete a sex offender treatment program, a trial court may, in its discretion and depending on the circumstances, revoke the defendant's probation. We base our conclusion in large part on our recent decision in Lawson v. State, 969 So.2d 222, 228 (Fla.2007), which considered the identical issue in the context of drug treatment as a condition of probation. We therefore approve Adams and disapprove *923 the conflicting opinions in Mitchell and Gessner. We further hold that, under the circumstances of this case, the trial court did not abuse its discretion in revoking Petitioner's probation.

I. FACTS AND PROCEDURAL HISTORY
Petitioner, Kenneth Adams, was charged with one count each of lewd or lascivious molestation and lewd or lascivious exhibition on an eleven-year-old girl. He pled guilty, was declared a sexual predator and habitual offender, and was sentenced to two years of community control followed by three years of sex offender probation. Within thirty-seven days of the sentencing, Adams's probation officer twice filed affidavits alleging that he had violated his community control. After the first violation, the trial court reinstated Adams's community control. After the second, however, the court revoked his community control and probation and placed him on six years of sex offender probation with the special condition that he serve 364 days in jail. One of the standard sex offender conditions required him to "enter, actively participate in, and successfully complete a sex offender treatment program with a therapist particularly trained to treat sex offenders."
On June 22, 2005, Adams was released from jail. On August 1, his probation officer filed yet another affidavit, this time alleging that Adams failed to fulfill the condition of sex offender treatment. At the revocation hearing, the probation officer testified that on two separate occasions, Adams was informed of the conditions of his probation. Adams told the officer that he was able to pay the costs of supervision and that he was working at a car wash six or seven days a week. Before the violation, Adams told the officer that he was attending counseling. Adams never told him that he could not afford it. When arrested, however, Adams said that "he just didn't have the money and he just didn't go."
At the revocation hearing, the director of the sex offender treatment program testified. At the initial intake appointment, he informed Adams of the program fees, which were: $50 for the initial intake, $25 for the first two months of group sessions, and then a likely increase to the standard $35. Although Adams did not make any payments, the program does not terminate anyone for inability to pay. The director believed Adams was aware of this policy because he normally instructs new intakes as much, but he could not remember whether he told Adams. Adams told the director he had a job, and did not at any time indicate he could not afford the fees.
The director assigned Adams to a group program. Adams attended the first session, but left the director a message canceling the next one because he had to work. Because rescheduling is permitted for legitimate reasons, Adams was not terminated for missing that session. However, Adams also failed to call or appear at the next two sessions. When a client misses two successive sessions for unexcused reasons, the program's policy is to terminate the client. Therefore, Adams was terminated for "non compliance with the treatment program."
Adams testified that he was told that he had to "enter, actively participate and successfully complete the sex offender treatment program." He also admitted that he was told the course requirements. He claimed, however, that he was not told he could continue without paying. He lived with his mother after his release from jail and made about $635 during the fifteen days he worked in late June and July. He gave half of his income to his mother for rent and living expenses and used the remainder *924 for food and clothing. Adams testified that he did not attend the sessions because he did not have the money and did not know how he would be treated. He thought that if he did not pay, he would be terminated from the program. Adams admitted, however, that he never told the program director that he could not attend because he could not pay the fees.
Based on Adams's two successive absences, the trial court found him in willful and substantial violation of his probation for failing to actively participate in and successfully complete the sex offender treatment program. The court found the violation willful because Adams had been informed of the program requirements (i.e., that two successive unexcused missed sessions would result in termination) and had the ability to pay for the sessions. The court concluded the violation was substantial because "sex offender probation and the treatment programs are absolutely essential to the well-being of not only Mr. Adams, but to the protection of society and any potential future victims . . . as a result of his not getting the necessary care and treatment." The trial court also found that Adams had demonstrated a pattern of violating probation. The court therefore revoked Adams's probation and sentenced him to eleven years in prison followed by ten years of sex offender probation.
On appeal, Adams argued that the trial court abused its discretion because the probation order did not specify a time period for completion of sex offender treatment or how many chances he had to complete it. Adams, 946 So.2d at 585. The Fourth District Court of Appeal rejected his argument and affirmed the trial court based on "competent testimony that Adams had the resources to pay for his treatment, was aware he would be accommodated if he could not pay, and simply failed to attend." Id. at 586.
Adams conflicts with decisions of the Second District. In Mitchell, the Second District ordered that a violation of a sex offender treatment condition be stricken where
the sex offender treatment condition only stated that Mitchell needed to complete the program. It did not specify that treatment had to be successfully completed on the first try or how many chances he would be given to complete the program. Accordingly, the State failed to prove that the violation of [the sex offender treatment condition] was willful and substantial, and the trial court abused its discretion in finding that the condition was violated.
871 So.2d at 1042; see also Gessner, 890 So.2d at 565 (where the probation order did not provide a scheduled time for the defendant to successfully complete the program or provide how many chances he would have to complete it, holding that because the defendant still had time to successfully complete a sex offender treatment program, the State did not establish a willful and substantial violation).[1] We now resolve the conflict.

*925 II. ANALYSIS
The conflict issue here is whether, where the probation order does not specify the number of attempts the defendant has to complete a sex offender treatment program or impose a time limit for completion, it remains within the trial court's discretion to find a defendant in violation of probation for failing to complete the program. While a trial court's decision to revoke probation is generally reviewed for an abuse of discretion, the issue presented is a question of law subject to de novo review. See Lawson, 969 So.2d at 228. Based substantially on our decision in Lawson, we hold that the failure of a probation order to include specific deadlines or the number of attempts the defendant will be given to complete sex offender treatment does not eliminate the trial court's discretion to revoke sex offender probation for failure to complete the program on the first try. We also hold that the trial court did not abuse its discretion in revoking probation in this case.
Below, we (A) detail our recent decision in Lawson, 969 So.2d 222, rejecting a per se abuse of discretion rule in situations involving substance abuse treatment probation; (B) explain why the same analysis applies to sex offender treatment; and (C) conclude that the trial court did not abuse its discretion in revoking Adams's probation.

A. Lawson

Adams argues that the failure to inform him that his first attempt at sex offender treatment had to be successful violates due process. In Lawson, 969 So.2d at 225, we rejected a nearly identical argument, the only difference being that the case involved substance abuse treatment instead of sex offender treatment. Therefore, our consideration of Petitioner's argument must begin (and may end) with an analysis of that case.
Our decision in Lawson also concerned the extent of a trial court's discretion in finding a violation of probation. We first reiterated "that the grant of probation `rests within the broad discretion of the trial judge and is a matter of grace rather than right.'" Id. at 229 (quoting Bernhardt v. State, 288 So.2d 490, 494 (Fla. 1974)). We further explained that "[j]ust as there is broad discretionary power to grant the privilege of probation, the trial court has equally broad discretion to revoke it." Id. After detailing the statutes related to court-ordered drug treatment, we concluded: "Based on these statutory provisions, the Legislature's concern with court-ordered treatment programs . . . is clear  rehabilitation pursuant to an individualized treatment plan. . . . [B]ecause the circumstances of treating each substance abuse problem are unique to that individual, trial courts must be able to operate with an element of flexibility. . . ." Id. at 231-32. We held:
[A] trial court could be well within its discretion in finding a willful and substantial violation where a defendant fails to complete a court-ordered drug treatment program, even though the order did not specify how many chances the defendant had to complete the program or when it had to be completed. Probation orders need not include every possible restriction so long as a reasonable person is put on notice of what conduct will subject him or her to revocation. . . . [A] probationer who has been given the privilege of being placed on probation, in lieu of serving jail time, is put on adequate notice that the treatment program should be undertaken at the beginning of the probationary period and that, if he or she is discharged for nonattendance, *926 he or she may not have another chance to complete the program.
Id. at 235.
Thus, in the context of substance abuse, Lawson rejected a bright-line rule "that a trial court may never find that a probationer substantially and willfully violated probation after being discharged from a drug treatment program for nonattendance if the probation order fails to specify the number of attempts allowed or set a specific time parameter for completion." Id. at 234. We noted that "such a rule may undermine the trial court's ability to `consider each violation on a case-by-case basis for determination of whether, under the facts and circumstances, a particular violation is willful and substantial and is supported by the greater weight of the evidence.'" Id. at 236 (quoting State v. Carter, 835 So.2d 259, 261 (Fla.2002)). However, we limited our decision to drug treatment programs and did not address other "distinct categories of treatment programs." Id. at 225 n. 1.
Today, we resolve the issue as it relates to sex offender treatment. For the reasons explained in the next section, we find the statutes addressing sex offender treatment reflect the same desire for "rehabilitation pursuant to an individualized treatment plan," and a corresponding need for trial court flexibility. We therefore hold that the reasoning of Lawson applies.

B. Sex Offender Treatment
To decide whether the reasoning of Lawson applies to the context of sex offender treatment, we must review the applicable statutes. Section 948.30, Florida Statutes (2007), requires the imposition of mandatory standard conditions of probation for certain sex offenders. The condition at issue here  "[a]ctive participation in and successful completion of a sex offender treatment program"  is one such condition. See § 948.30(1)(c), Fla. Stat. (2007) (previously codified at § 948.03(5)(a)(3), Fla. Stat. (2003)). The statutes applicable to sex offender probation emphasize the individualized nature of treatment. For example, the very definition of sex offender probation provides that it is "a form of intensive supervision . . . which emphasizes treatment and supervision of a sex offender in accordance with an individualized treatment plan." § 948.001(10), Fla. Stat. (2007) (emphasis added); see also § 948.31, Fla. Stat. (2007) (providing for diagnosis, evaluation, and treatment of offenders placed on probation or community control for certain sex offenses or child exploitation, including a requirement that the court be provided a "plan for counseling for the individual") (emphasis added).
The legislative goal of individualized treatment, as well as other policies behind probation, also favors individualized determinations of whether the failure to complete a treatment program constitutes a violation of probation. In Woodson, the Fifth District analyzed the statute and the goals of imposing sex offender probation to conclude:
While the Legislature has clearly indicated that the emphasis of sex offender probation is treatment of the offender, the concomitant goals of rehabilitation and protection of society once the sex offender is released on supervision may only be accomplished if the offender undertakes immediate treatment, as required by section 948.03(5)(a)3. It makes no sense to release the offender into society on a lengthy term of probation only to allow the offender the discretion to undertake treatment several years later toward the end of the probationary period. Releasing a sex offender, untreated, does not alleviate the concern that he or she will reoffend and affords no protection to society. Moreover, a *927 requirement that provides additional chances for treatment in the future before expiration of the probationary period after willful failure to actively participate in and complete a sex offender treatment program, simply because the offender expresses a willingness to comply at a later date, opens the door to mischievous manipulation by the offender and thwarts all of the goals of probation.
. . . .
We believe that affording the trial court discretion in determining whether a violation of sex offender probation is willful and substantial, and the penalty to be imposed for a violation, provides the court with flexibility in imposing just punishments for probation violations, comports with legislative intent and fosters the goal of imposing probation as a criminal sanction.
864 So.2d at 516-17 (footnote omitted); see also Woodson, 889 So.2d at 824 (Pariente, C.J., concurring) ("Because each [sex offender] treatment plan is individualized, it is not always realistic for the trial judge to specify time parameters for completion at the time of sentencing."). We agree.
Sex offender treatment, like drug treatment, focuses on "rehabilitation pursuant to an individualized treatment plan." Lawson, 969 So.2d at 232; see §§ 948.001(10), 948.30(1)(c), 948.31, Fla. Stat. (2007). As with the probationary condition of drug treatment, trial courts must have the flexibility to address particular circumstances. We therefore conclude, consistent with Lawson, that even where the probation order fails to specify the number of chances the defendant has to complete the program or impose a time limit for compliance, the trial court retains discretion to find a defendant in willful and substantial violation of probation for failure to attend and complete a sex offender treatment program.

C. Abuse of Discretion in this Case
Having concluded that the trial court does not automatically abuse its discretion in these situations, we must decide whether the trial court abused its discretion in revoking Adams's probation. We hold it did not. Adams, who has a long criminal history, pled guilty to lewd and lascivious exhibition and molestation on an eleven-year-old child and was sentenced to community control and probation. Within only thirty-seven days of his sentencing, his probation officer filed two affidavits of violation. The second resulted in revocation of his community control and probation. Adams was then placed on six years of sex offender probation with the special condition that he serve 364 days in jail. After his release from jail, Adams was informed of the program requirements. Yet he attended only one of his scheduled group sex offender treatment sessions before being terminated for two consecutive unexcused absences.
As stated above, the trial court found Adams's violation was both willful and substantial. It was willful because he had been informed that two successive unexcused absences would result in termination, and he had the ability to pay for the sessions. It was substantial because of the importance of sex offender treatment to the offender and to society. The trial court also stressed that Adams had demonstrated a pattern of probation violations.
The trial court did not abuse its discretion in finding that Adams's violation of probation was willful. See Mills v. State, 840 So.2d 464, 467 (Fla. 4th DCA 2003) ("Generally, un-excused absences from required therapeutic programs constitute willful violations of probation.") (quoting Marcano v. State, 814 So.2d 1174, 1176 *928 (Fla. 4th DCA 2002)). We have recognized that a violation is not willful where it is based on inability to pay court-ordered costs. See Stephens v. State, 630 So.2d 1090, 1091 (Fla.1994) ("[B]efore a person on probation can be imprisoned for failing to make restitution, there must be a determination that that person has, or has had, the ability to pay but has willfully refused to do so."). Although Adams claims he was unable to pay for the program, he never communicated such a concern to the program's director, and he was not terminated because of his failure to pay. Rather, as the Fourth District recognized, he was terminated for two consecutive unexcused absences. See Adams, 946 So.2d at 585. The program's director testified that he does not terminate anyone for inability to pay. Adams raised his ability to pay as an issue only when he was arrested for the violation. The trial court rejected his explanation. The court instead concluded that, as Adams testified, even after helping his mother pay expenses, he still had sufficient income to pay for treatment. The trial court was well within its discretion in rejecting his excuse as unpersuasive. See Carter, 835 So.2d at 262 ("The trial court is in a better position to identify the probation violator's motive, intent, and attitude and assess whether the violation is both willful and substantial."). In sum, the trial court imposed a reasonable treatment condition, Adams was aware of the program requirements, and he had a reasonable opportunity to attend treatment. He simply failed to do so. Adams's pattern of violating community control and probation also supports the trial court's findings.
Nor did the trial court abuse its discretion in finding that the violation was substantial. As the trial court found, sex offender probation and the treatment programs are essential not only to Adams's well-being and rehabilitation, but also to the protection of society and any potential future victims.
Finally, although Adams expressed willingness to reenroll in the program, whether he should be given such an opportunity is within the trial court's discretion. See Woodson, 864 So.2d at 517 ("If immediate initial attempts are unsuccessful and the defendant expresses a willingness to try again, other chances at compliance are a matter that should be left to the sound discretion of the trial court.").

III. CONCLUSION
Adopting a bright-line rule requiring probation orders to specify the number of attempts the defendant will be given to complete sex offender treatment, or the time parameters for completing treatment, would limit the trial courts' needed flexibility. Therefore, consistent with our recent decision in Lawson, 969 So.2d 222, we hold that even if a sentencing order does not specify the number of chances the defendant will be given to complete sex offender treatment or a deadline for completing it, a trial court retains the discretion to find a defendant who enrolls in but fails to complete sex offender treatment in willful and substantial violation of probation. We therefore approve the Fourth District's decision in Adams and disapprove the Second District's decisions in Mitchell and Gessner. However, we encourage trial courts to emphasize the importance of these programs and the potentially grave consequences attendant to the failure to begin and complete treatment.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, QUINCE, and BELL, JJ., concur.
PARIENTE, J., recused.
NOTES
[1] In both Mitchell and Gessner, the Second District certified conflict with the Fifth District's decision in Woodson v. State, 864 So.2d 512 (Fla. 5th DCA 2004). We dismissed review of Woodson, finding the case "factually and legally distinguishable" from the case with which it certified conflict, Young v. State, 566 So.2d 69 (Fla. 2d DCA 1990). Woodson v. State, 889 So.2d 823 (Fla.2004). We likewise dismissed review of Mitchell. See Mitchell v. State, 911 So.2d 93, 93 (Fla.2005) ("Consistent with our decision in Woodson v. State, 889 So.2d 823 (Fla.2004), we conclude that review herein was improvidently granted, and we hereby dismiss this review proceeding."). The parties did not seek review in Gessner. We reject the State's argument that our dismissals in these cases (or others) indicate we do not have jurisdiction in this case. As explained above, Adams conflicts with Mitchell and Gessner. Therefore, we have jurisdiction. See art. V, § 3(b)(3), Fla. Const.