QUINCE, J.
Warren Staples seeks review of the decision of the Fifth District Court of Appeal *30 in Staples v. State, 161 So.3d 561 (Fla. 5th DCA 2014), on the ground that it expressly and directly conflicts with decisions' of the First, Second, and Fourth District Courts of Appeal in Bennett v. State, 684 So.2d 242 (Fla. 2d DCA 1996), Bell v. State, 643 So.2d 674 (Fla. 1st DCA 1994), and Diaz v. State, 629 So.2d 261 (Fla. 4th DCA 1993), on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons that follow, we approve the Fifth District’s holding in the instant case and disapprove the conflict cases to the extent that they are inconsistent with our decision.
FACTS
On August 28, 2012, Petitioner Warren Staples pleaded guilty to one count of traveling to meet a minor under section 847.0135(4)(b), Florida Statutes (2011).[1] Petitioner was adjudicated guilty and, as part of a stipulated downward departure sentence, was sentenced to six days time served and five years of sex 'offender probation. Condition 17 of Petitioner’s sex offender probation required Petitioner to actively participate in and successfully complete a sex offender treatment program. See § 948.30(1)(c), Fla. Stat. (2011). Neither “active participation” nor “successful completion” is defined by statute. See §§ 948.30(1)(c), 948.001, Fla. Stat. (“Definitions”).
From November 2012 to March 2013, Petitioner attended a sex offender treatment program with ITM Group. However, on March 22, 2013, Petitioner was discharged from the program for refusing to admit to any sexual misconduct necessitating treatment.[2] As a result of being terminated, Petitioner was charged with violating Condition 17 of his probation. Staples, 161 So.3d at 562-63. Petitioner was not alleged to have violated his probation on any other grounds.
At the violation of probation hearing, Petitioner’s therapist, Jack Stultz, testified that Petitioner was first admitted into the program on a trial basis to determine his amenability for treatment. This trial period typically lasts for two months but was extended in Petitioner’s case to give him an opportunity to admit responsibility for any deviant or inappropriate behaviors to be addressed as part of the program.[3] Dr. Stultz also testified that Petitioner actively participated in the program and had not missed any sessions since January, when Petitioner was transferred to Dr. Stultz’s sessions.[4] Petitioner’s probation officer testified that Petitioner was substantially in compliance with the other conditions of his probation and that he was found to be in violation solely because of his continued denial of any deviant conduct.
Petitioner testified that he entered his guilty plea because he felt it was in his *31 best interest. Both the transcript and judgment form from Petitioner’s original plea hearing indicate that Petitioner pleaded guilty. The judgment form included options for pleading “Guilty-Best interest” and nolo contendere, but neither option was selected. Upon entry of his guilty plea, Petitioner was not required to admit in court that he had actually committed the charged offense, nor was he advised prior to the entry of his plea that the ITM Group treatment program would require him to admit some sexually deviant behavior. Staples, 161 So.3d at 562. Before his admittance into the treatment program, Petitioner’s probation officer instructed Petitioner on the conditions of his probation, including Condition 17. However, those conditions did not expressly include the requirement that Petitioner admit any wrongdoing, nor did the probation officer disclose this program requirement until later on during Petitioner’s treatment. Nonetheless, Petitioner and his probation officer both acknowledged that before his discharge, Petitioner was made aware that continuing to deny sexual misconduct could result in his termination from the program, thereby violating his probation. Petitioner testified that he was willing to finish the program, despite its financial strain on him. Neither Petitioner nor his probation officer investigated or discussed alternative programs Petitioner could attend that would not require an admission of guilt or wrongdoing.[5]
At the conclusion of the testimony, the trial court initially struggled to reconcile Petitioner’s lack of notice of the admission requirement with the probation condition that Petitioner successfully complete the sex offender treatment program.[6] However, upon being presented with case law— specifically, Mills v. State, 840 So.2d 464 (Fla. 4th DCA 2003)—the trial court found that even if Petitioner did not have notice that he would be required to admit guilt as a condition of his probation, Petitioner’s best recourse upon discovering the requirement was to move to set aside his plea on that basis. Thus, the court revoked Petitioner’s probation, finding that the State presented sufficient evidence of a violation.
The Fifth District affirmed the revocation:
On appeal, Staples argues that his dismissal from the sex offender treatment program based on his repeated refusal to admit to engaging in deviant sexual behavior cannot constitute a willful and substantial violation of probation where he was never advised, prior to the entry of his plea, that his admission to such behavior would be required. Although Staples may not have been aware of this requirement at the time of the entry of his plea, the record reflects that he was made aware of the necessity to acknowledge his offending behavior months before he was dismissed from the program. Upon learning of the full consequences of his plea, Staples’ reme *32 dy was to either file a written motion to withdraw his plea, or a motion to vacate his judgment and sentence pursuant to Florida Rule of Criminal Procedure 3.850. Because Staples did neither, we conclude that the trial court could properly revoke his probation.
Staples, 161 So.3d at 562 (footnotes omitted). The district court found that given the treatment program’s requirement that an offender admit sexual misconduct in order to complete the program, it was Petitioner’s “decision to refuse to take the steps necessary to complete the treatment program” and accepting Petitioner’s argument “would, in essence, excuse [Petitioner] from performance of a legislatively mandated probation condition.” Id. at 563. Petitioner appeals this decision on the basis of conflict jurisdiction.
ANALYSIS
Petitioner argues that the trial court abused its discretion when it found that Petitioner willfully and substantially violated his probation by refusing to admit to some type of deviant behavior to be addressed by the sex offender treatment program. Whether a violation of probation is willful and substantial and has been demonstrated by the greater weight of the evidence, is a question of fact for the trial court. State v. Carter, 835 So.2d 259, 262 (Fla.2002). The decision to revoke probation based on a willful and substantial violation is reviewed for an abuse of discretion. Id. However, where the issue presented is a question of law, the standard of review is de novo. Adams v. State, 979 So.2d 921, 925 (Fla.2008); Lawson v. State, 969 So.2d 222, 229 (Fla.2007). While we will need to determine whether the trial court abused its discretion, the conflict issue here presents the legal question of whether a refusal to admit sexual misconduct can constitute a violation of probation. As such, this initial question of law is reviewed de novo.
I. The Conflict Issue
The trial court and the Fifth District in the instant case found the refusal to admit wrongdoing to be a violation of the probation condition requiring successful completion of a sex offender treatment program because such refusal results in the offender’s discharge from the program .he was required to successfully complete. See Mills, 840 So.2d at 467 (“Mills did not express any interest in successfully completing a [sex] offender program in which he would have to admit his guilt. Successful completion, of the program, however, was dependent on such an acknowledgment. Therefore, the court did not abuse its discretion in finding a violation.”); Arias v. State, 751 So.2d 184, 186 (Fla. 3d DCA 2000) (finding that probationer’s refusal to accept full responsibility for his criminal conduct “obviously precludes his successful completion of this program”); Archer v. State, 604 So.2d 561, 563 (Fla. 1st DCA 1992) (“Archer adamantly maintained at the hearing that he had no sexual problem and expressed.no willingness to ... comply with the condition of probation.”). Courts following this approach have found the refusal to admit wrongdoing a willful and substantial violation because upon becoming aware of the admission requirement, the offender should have made a motion to withdraw the plea or vacate the judgment. Staples, 161 So.3d at 562; Mills, 840 So.2d at 466-67; Archer, 604 So.2d at 563. Having done neither, the offender can have his or her probation revoked by the trial court, regardless of whether the offender was made aware of the requirement prior to the entry of the plea. Staples, 161 So.3d at 562; Mills, 840 So.2d at 466-67; Archer, 604 So.2d at 563.
*33 On the other hand, the conflict cases consider the program requirement of admitting wrongdoing to be a new, additional condition of probation, not imposed by the trial court. Bennett, 684 So.2d at 243 (recognizing that probation condition required probationer to “enter into and successfully complete” a sex offender treatment program, but finding that “no condition of probation was imposed that required him to admit to a counselor the sexual acts charged”); Bell, 643 So.2d at 675 (“The probation order did not require that [probationer] admit to the underlying charges.”); Diaz, 629 So.2d at 262 (“No specific condition of probation was imposed requiring [probationer] to admit to a counselor the specific acts charged.”). Accordingly, those courts find that the refusal to admit is not a willful and' substantial violation because (1) a trial court cannot revoke probation for violation of a condition that was imposed by someone other than the trial judge, i.e., a probation officer or therapist; [7] and (2) the probationer had no notice prior to the entry of the plea that he or she would be required to admit sexual misconduct. Bennett, 684 So.2d at 243; Bell, 643 So.2d at 675; Diaz, 629 So.2d at 262.[8] This second rationale appears to be based on the idea that “a defendant could not willfully violate a condition of probation without being on adequate notice of the conduct that is prohibited.” Lawson, 969 So.2d at 230.
We reject the rule from Bennett, Bell, and Diaz that requiring an offender to admit sexual misconduct is an impermissible third-party condition that- cannot serve as the basis of a revocation. Instead, we recognize the admission requirement not as a probation condition on its own but as an internal, program-specific requirement that may or may not cause’an offender to violate the “successful completion” condition of sex offender probation.
*34 We also reject the rule from Bennett and Diaz that where a probationer is not told prior to the entry of a plea that an admission of wrongdoing is required, the probationer does not have sufficient notice of the admission requirement for the probationer’s refusal to admit sexual misconduct to be a willful violation. Sex offender treatment programs will always have program-specific requirements not embodied by the generic language of the probation condition requiring “successful completion” of the program. Bennett and Diaz rob the trial court of its discretion to make fact-specific determinations as to whether a probationer had notice of those program-specific requirements. Without discretion, courts would have to specifically delineate, in each probation order, the program to which an offender is being sent and that program’s internal requirements—an approach we have implicitly rejected. Lawson, 969 So.2d at 235 (holding that “[probation orders need not include every possible restriction so long as a reasonable person is put on notice of what conduct will subject him or her to revocation” and that “[ajlthough the conditions should be clearly set out and must mean what they say, every detail need not be spelled out and the language should be interpreted in its common, ordinary usage”). Thus, we disapprove Bennett, Bell, and Diaz.
II. This Case
This Court reviews the trial court’s revocation of probation for an abuse of discretion and must affirm the revocation unless “the trial court acted in an arbitrary, fanciful or unreasonable manner.” Carter, 835 So.2d at 262. Here, the trial court found that even if Petitioner did not have notice that he would be required to admit guilt as a condition of his probation, under Mills, Petitioner’s best recourse upon discovering the requirement was to move to set aside his plea on that basis. Thus, the trial court found that the State presented sufficient evidence that Petitioner willfully and substantially violated his probation. The Fifth District affirmed, also finding that Petitioner’s proper remedy was to file a motion to withdraw his plea or vacate his judgment and sentence. Staples, 161 So.3d at 562. Both courts are correct that Petitioner could have moved to set aside his plea or vacate his judgment and sentence.
As to whether the violation was substantial, Dr. Stultz testified that a client would not be amenable to treatment in the ITM program if that client were not willing to admit that he or she has a problem. Arias, 751 So.2d at 186 (finding that probationer’s refusal to accept full responsibility for his criminal conduct “obviously precludes his successful completion of this program”). Therefore, Petitioner’s refusal to admit the need for help completely foreclosed his ability to successfully complete ITM’s sex offender treatment program. Further, this Court has previously found a violation of sex offender probation to be substantial based on the importance of treatment to the sex offender and society. Adams, 979 So.2d at 928 (“[S]ex offender probation and the treatment programs are essential not only to [the offender’s] well-being and rehabilitation, but also to the protection of society and any potential future victims.”).
Regarding willfulness, a probationer cannot willfully violate a condition of probation unless that probationer has adequate notice of what conduct is prohibited. Lawson, 969 So.2d at 230. Here, Dr. Stultz testified that ITM extended Petitioner’s trial period by about three months in order to give Petitioner an opportunity to identify any deviant or inappropriate behaviors that needed to be addressed as part of the program. Petitioner rejected *35 this opportunity. More importantly, Petitioner was made aware, before being discharged, that continuing to deny sexual misconduct could result in his termination from the program and thereby violate his probation. Yet Petitioner did not file the appropriate motion with the trial court to avoid the violation. The trial court did not abuse its discretion in revoking Petitioner’s probation for his willful and substantial violation of probation. Accordingly, we approve the Fifth District’s holding in the instant case.
CONCLUSION
We disapprove Bennett, Bell, and Diaz to the extent that they are inconsistent with our decision. We approve the Fifth District’s decision in Staples v. State, 161 So.3d 661 (Fla. 5th DCA 2014), affirming the trial court’s revocation of Petitioner’s probation.
It is so ordered.
LEWIS, CANADY, and POLSTON, JJ., concur.
PARIENTE, J., dissents with an opinion, in which LABARGA, C.J., and PERRY, J., concur.

. Petitioner was also charged with solicitation of a minor via computer, § 847.0135(3)(b), Fla. Stat. (2011), and attempted lewd or lascivious battery, §§ 800.04(4)(a), 777.04. However, the State entered a nolle prosequi on those counts.

. Admitting fault or some form of deviant sexual misconduct is a required part of ITM Group's sex offender treatment program.

.Dr. Stultz opined that a client is not amenable to treatment if that client is not willing to admit that he or she has a problem.

. Petitioner began treatment with another therapist in the ITM Group, but was transferred to Dr. Stultz after a change in employment required that he attend night sessions instead. Petitioner provided the only testimony about his attendance while being treated by the first therapist in November and December and stated that he could not remember having any absences.

. Notably, this record does not demonstrate that any such programs exist. Dr. Stultz only testified that he knew other programs existed but did not know what their requirements were. Petitioner testified that no one indicated to him whether other programs not including the admission requirement existed.

. The trial judge's first impression was that the probation order "leaves out any requirement for admitting. And although [Petitioner's probation officer] and ITM might have said he has to admit[,] I can’t violate somebody for orders created by probation or by counseling services. I can only violate for orders created by, in this case, Judge Polodna and this Court." He also stated, "Probation doesn’t have the authority to create conditions of probation. I can’t violate him for a condition of probation that probation tells the defendant he has to do.”

. See Kiess v. State, 642 So.2d 1141, 1142 (Fla. 4th DCA 1994) ("Violation of a condition which is imposed by a probation officer, rather than an express condition of the trial court, cannot serve as a basis for revocation of probation.”),

. Respondent argües that these cases are distinguishable in several ways. First, he asserts that they are distinguishable because they each require the probationer to accept responsibility for or admit to the crime charged; whereas in this case, Petitioner was required only to admit wrongdoing or deviant sexual behavior in general. However, it is not clear from the record in this case whether Petitioner was required to admit guilt or simply acknowledge deviant behavior. Further, if this factor distinguishes the conflict cases, it also distinguishes the veiy case upon which Respondent himself relies because the offender in Mitts was also required to "take responsibility for his offending behaviors” and “admit his guilt.” Mills, 840 So.2d at 466; see also Arias, 751 So.2d at 186-87.
Respondent also argues that the cases are distinguishable because they involve probationers who were not on sex offender probation but instead received, as special conditions of their probation, conditions with language similar to the successful completion condition of sex offender probation. However, Respondent does not explain why such fact precludes the reasoning from being applied similarly to other types of probation cases. See Adams, 979 So.2d at 926-27 (applying principle from drug offender probation case to sex offender probation case).
Lastly, Respondent argues that Bell and Diaz are distinguishable because the conditions in both cases required something less than "completion” of treatment. Bell, 643 So.2d at 674 (requiring that offender "submit to” counseling); Diaz, 629 So.2d at 261 (requiring offender to "receive” treatment or counseling). However, in neither case was that fact relevant to the way the district court decided the willful and substantial violation issue. As such, the conflict cases cited by Petitioner are not distinguishable on the bases offered by Respondent.