# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2021-3919
_____

FERNARD GEORGE RAMCALD, JR.,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Jennie Kinsey, Judge.

July 9, 2025

ROBERTS, J.

In this appeal, we are asked to determine whether the trial court abused its discretion when it revoked Appellant's probation. Appellant contends the trial court erred when it determined the State proved that he violated his probation. We agree.

In 2021, Appellant was placed on probation for felony battery. As part of the terms of his probation, Appellant was ordered to have no contact with the victim, which included no contact through third parties and email. In less than two weeks after being placed on probation, Appellant's probation officer alleged that Appellant violated his probation by having indirect communication with the victim via email.

During the evidentiary hearing on the violation of probation, the victim testified that she received an email from Rock and Roll Sushi, which was where Appellant worked. The email invited the receiver to place an online order through the end of May and receive a discount on that order. The return email address was associated with the general manager of Rock and Roll Sushi; he was also Appellant's friend. The victim testified that she never used her email address to order food from anywhere, including Rock and Roll Sushi. She did not visit Rock and Roll Sushi's Facebook page and had not signed up for its promotions. The victim knew Appellant knew her email because she had received emails from Appellant at that email address.

The general manager testified that he hired Appellant to work for Rock and Roll Sushi and allowed Appellant to return to work after his criminal case was resolved. The general manager was asked to look at the email the victim received. He testified that the email was consistent with the type of email a person would receive in response to placing an online order. Those types of emails were automated and showed his name. Rock and Roll Sushi did not send out promotional emails unless a person signed up to receive them. He believed Rock and Roll Sushi had online ordering for a little over a year. On cross-examination, the general manager stated that when he was not at his computer, it was locked and password protected.

The State presented no additional evidence. Appellant argued that the State had not met its burden because it failed to show that Appellant caused the email to be sent. The State disagreed. It claimed that the circumstances surrounding the email being sent pointed to Appellant. The trial court agreed and revoked Appellant's probation.

On appeal, Appellant argues that the trial court erred when it found the State met its burden of proof. A trial court's factual finding that the State proved by a greater weight of the evidence that a violation of probation occurred is reviewed under the competent, substantial evidence standard. *Rodgers v. State*, 171 So. 3d 236, 238 (Fla. 1st DCA 2015). The trial court's ultimate decision of whether the violation was willful and substantial is

reviewed for an abuse of discretion. *Staples v. State*, 202 So. 3d 28, 32 (Fla. 2016).

> The term "competent substantial evidence" does not relate to the quality, character, convincing power, probative value or weight of the evidence but refers to the existence of some evidence (quantity) as to each essential element and as to the legality and admissibility of that evidence. Competency of evidence refers to its admissibility under legal rules of evidence. "Substantial" requires that there be some (more than a mere iota or scintilla), real, material, pertinent, and relevant evidence (as distinguished from ethereal, metaphysical, speculative or merely theoretical evidence or hypothetical possibilities) having definite probative value (that is, "tending to prove") as to each essential element of the offense charged.

*Savage v. State*, 120 So. 3d 619, 621 (Fla. 2d DCA 2013) (quoting *Dunn v. State*, 454 So. 2d 641, 629 n.11 (Fla. 5th DCA 1984) (Cowart, J. concurring specially)).

In the instant case, the State failed to produce substantial evidence showing that Appellant sent or caused the email to be sent to the victim. There is no evidence that Appellant was the only person who knew the victim's email address. Likewise, there was no evidence that Appellant had access to the system or email account that generated the email to the victim. The State presented no evidence that tied Appellant to a prior order that would have triggered the generated email. Additionally, there was no evidence that showed Appellant had a history of sending such cryptic messages to the victim. Without such evidence, the State failed to show the causal connection needed to meet its burden. Accordingly, the trial court abused its discretion when it revoked Appellant's probation.

REVERSED.

ROBERTS and KELSEY, JJ., concur; TANENBAUM, J., concurs in result with opinion.

3

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

TANENBAUM, J., concurring in result.

Our review of probation-violation proceedings is exceedingly deferential. This point flows from the premise that "[p]robation is a matter of grace extended to the offender, usually on the basis of a pre-sentence investigation which suggests that he is not likely to repeat his criminal conduct and could, most likely, be rehabilitated while at liberty under supervision." *State ex rel. Roberts v. Cochran*, 140 So. 2d 597, 599 (Fla. 1962). The trial court, in turn, "is allowed a broad judicial discretion to determine whether the conditions of the probation have been violated, and, therefore, whether the revocation of probation is in order." *Id.* This "broad and extensive" discretion ensures the protection of "the interests of society . . . against a repeating offender or one who disregards the conditions stipulated for his remaining at large." *Id.*

Enter here the caveat—the inevitable "but": This discretion, broad as it may be, is not "unbridled." *Id.* The revocation proceeding must comport "with certain due process requirements." *Bernhardt v. State*, 288 So. 2d 490, 495 (Fla. 1974). There must be a hearing, "and the evidence upon which to predicate a revocation introduced at the hearing must be sufficient to satisfy the conscience of the court that a condition of probation has been violated." *Id.* (citations omitted); *see also Brill v. State*, 32 So. 2d 607, 609 (Fla. 1947) (explaining that the purpose of having evidence presented at a hearing "is to satisfy the conscience of the court as to whether the conditions of the suspended sentence have been violated"). The hearing also gives the probationer "a chance to explain away the accusation against him." *Brill*, 32 So. 2d at 609. The trial court then should give "careful consideration" to the decision to revoke, and it should in fact revoke probation "only when the probation violation is both willful and substantial so as to indicate that probation will not work for that defendant." *State v. Carter*, 835 So. 2d 259, 262 (Fla. 2002).

4

Keeping this due-process caveat in mind, we review the trial court's exercise of discretion in a revocation proceeding for abuse. *See Russell v. State*, 982 So. 2d 642, 646 (Fla. 2008) (explaining that review on appeal is "under an abuse of discretion standard" (citing *Bernhardt*, 288 So. 2d at 501)). We must look at "whether or not the trial court acted in an arbitrary, fanciful or unreasonable manner in determining that [the probationer's] violation was both willful and substantial." *Carter*, 835 So. 2d at 262 (citing *Canakaris v. Canakaris,* 382 So. 2d 1197 (Fla. 1980)).

This standard of review reflects the unique nature of a violation hearing. It is "informal" and does "not take the course of a regular trial," and "the evidence [does not] have the same objective as that taken at a regular trial." *Brill*, 32 So. 2d at 609. Moreover, unlike a trial, the hearing is not strictly adjudicatory, so the court is not expected to make findings of fact material to elements that must be proven by the proponent of the cause. In turn, we cannot realistically look at whether the trial court's "findings" are supported by a legally sufficient quantum of competent evidence, because there are *no such findings* to consider—and no rules of evidence applied.[1]

---

[1] A panel of this court did state, without analysis, that "findings supporting that determination [regarding a violation] must be supported by competent, substantial evidence." *Rodgers v. State*, 171 So. 3d 236, 238 (Fla. 1st DCA 2015). In doing so, the panel quoted another panel in *White v. State*, 170 So. 3d 144 (Fla. 1st DCA 2015). The panel in *White*, without analysis, cited to *Prickett v. State*, 895 So. 2d 533 (Fla. 1st DCA 2005). In *Prickett* there is one mention of "competent, substantial evidence," and it is in a parenthetical tied to the panel's citation to *Van Wagner v. State*, 677 So. 2d 314, 317 (Fla. 1st DCA 1996). There is no discussion of the application of that standard—not even a mention of the term "competent, substantial evidence"—in *Van Wagner*. At all events, this standard of review seemingly conflicts with the supreme court's insistence that the only standard of review here is abuse of discretion. *See Carter*, 835 So. 2d at 262 (explaining that the trial court has "broad discretion" *both* to determine the nature

5

What are we looking for, then, when we consider whether there has been an abuse of discretion? Primarily, we are looking for "reasonableness," which the supreme court tells us means we must determine "whether there is logic and justification for the result." *Canakaris*, 382 So. 2d at 1203. This terminology is redolent of an earlier description by the supreme court of "competent" evidence: evidence that "accord[s] with logic and reason." *Andrews v. C.B.S. Div., Maule Indus.*, 118 So. 2d 206, 210 (Fla. 1960).

The trial court here concluded that Mr. Ramcald willfully and substantially violated his probation by having indirect, third-party contact with the victim of his underlying crime. It made that determination based on testimony from the victim that the contact occurred, the contact being a single promotional e-mail from a sushi joint where Mr. Ramcald worked. The e-mail did not purport to come from Mr. Ramcald, it did not make any mention of him, and the victim had no knowledge of how the restaurant obtained her address. Meanwhile, the e-mail merely stated the following:

> We just wanted to send you a thank you for trying our on line [*sic*] ordering system. Please feel free to go online and to receive 25% off you[r] order. You can pull up discount when checking out. This offer will be valid thru the end of May.

At best, then, the victim had to have *inferred* that the e-mail came to her at the direction of Mr. Ramcald, an inference that she herself could only have drawn from her own limited personal knowledge of the following: 1) that Mr. Ramcald knew her e-mail address from when they used to date; 2) that Mr. Ramcald works at the sushi joint that sent her the e-mail; and 3) that she never provided her e-mail address to the restaurant. That is it. There were no witnesses with personal knowledge about the e-mail (other than the victim's testimony that she received it). The trial court, in essence, found a violation of probation without any testimony from someone with *personal knowledge* of facts that could link Mr. Ramcald to the e-mail that the victim received. This weak inference by the victim from her limited personal knowledge has

of the violation and whether the violation "has been demonstrated by the greater weight of the evidence").

6

no reliability and is of questionable competence. *Cf. Pa. R. Co. v. Chamberlain*, 288 U.S. 333, 338–39 (1933) (explaining how a witness's testimony that a collision occurred could not put that fact in dispute when the fact was *not* "brought to [the witness's] attention as a perception of the physical sense of sight or of hearing," the witness made only "an inference to that effect drawn from observed facts which gave equal support to the opposite inference," and "all the witnesses who were in a position to see testified that there was no collision"). A witness's testimony about her own conclusion "from what [s]he [her]self observed"—can be said to "prove[] nothing" (*i.e.*, can be said to be incompetent), "since it is not allowable for a witness to resolve the doubt as to which of two equally justifiable inferences shall be adopted." *Id.* at 340; *see also id.* at 341 (explaining further how testimony about a fact based only on "an inference or inferences" cannot controvert testimony, based on personal observation, that is "inconsistent with such inferences").

There is no logic or reason, then, in the trial court's reliance on this flimsy (to put it politely) evidence to conclude that Mr. Ramcald had indirect contact with the victim through a third party in violation of the terms of his probation. The trial court relied on inferences made by the victim rather than look for testimony regarding personal knowledge of fact from which *the trial court* could reliably infer a violation. There were no indicia of reliability at all in the evidence presented to the trial court.

On review in this appeal is the trial court's order modifying Mr. Ramcald's terms of probation to add 342 days of jail time, which he had already served by the time the order was rendered, plus two years of community control and two additional years of probation. That modification could only have been authorized by the trial court's properly determining that a violation had occurred. *See* § 948.06(2)(e), Fla. Stat. The trial court acted arbitrarily in concluding that a violation occurred, which is to say the court abused its discretion in modifying the previous order imposing probation. We should vacate the modification order,

which will have the effect of reinstating the prior order of probation.[2]

––––––––––––––––––––––

Jessica J. Yeary, Public Defender, and Joel Arnold, Assistant Public Defender, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and David Welch, Assistant Attorney General, Tallahassee, for Appellee.

–––––––––––––––––

[2] "Vacate" is the proper term to use in this context. The order of probation is not a judgment; it is a function of the court's management of the probationer under its jurisdiction. We reverse judgments but vacate orders, including sentencing and probation orders.