OPINION. Harron, Judge: Respondent determined that the sum of $6,500 was received by petitioner and he increased petitioner’s income by that amount. Petitioner has the burden of proving that he is not liable for tax upon such amount. A ruling of the Commissioner assessing income tax is presumed to be correct and a taxpayer disputing the assessment on income tax deficiency has the burden of overcoming this ' 'prima facie presumption of correctness. Snell Isle, Inc. v. Commissioner, 90 Fed. (2d) 481. Respondent has assessed a 50 percent fraud penalty pursuant to the provisions of section 293 (b) of the Revenue Act of 1936. Section 601 ui the Revenue Act of 1928 specifically places the burden of proving fraud on the Commissioner. A charge of fraud is a serious matter in the law. Fraud may not be presumed. The respondent must prove it by clear and convincing evidence. Henry S. Kerbaugh, 29 B. T. A. 1014; affd., 74 Fed. (2d) 749. Petitioner vigorously denies that he received $6,500, or any amount, from Ultican. Respondent called several witnesses — Herber, Henry N. Anderson, Ultican, Stallard, and S. H. Hamer, a special agent of the Intelligence Unit of the Bureau of Internal Revenue. The testimony, of Herber, Stallard, and Anderson clearly establishes the fact that the Exportation Co. disbursed $6,500 and transferred that sum to Ultican. Respondent’s case rests upon the testimony of all of the above witnesses, who were the principals in the disbursements of the above sum of money excepting Hamer, to whose testimony reference will be made later. Petitioner called several witnesses. Their testimony relates in part to the state of labor controversies, or the lack of such, in the area of Grays Harbor at the time in question. Careful consideration has been given to all of the testimony of all of the witnesses. Except for the checks of the Exportation Co., the evidence consists wholly of the testimony of the witnesses produced by each party. There is no reason to doubt the testimony of Anderson and Herber relating to their reasons for entering into a transaction involving the disbursement of the sum in question. A longshoremen’s strike involving the entire Pacific Coast region was in progress from November 26, 1936, until February 4,1937. One of petitioner’s witnesses, Olsen, corroborated the testimony of Herber, that there had been instances in Grays Harbor when a local of the Sawmill and Timber Workers Union would throw out a picket line through which longshoremen refused to go until the dispute was settled. During the period October 1936 to February 11, 1937, a strike occurred at the Poison Logging Co. near Grays Harbor. Herber testified that in the early part of 1937 a ship proceeding from the Columbia River was picketed at Willapa Harbor, could not be loaded, and proceeded without the cargo. In June of 1937 there was a dispute involving loggers at the Picco Logging Co. near Grays Harbor, logs from that company were declared “hot,” and the longshoremen at Grays Harbor refused to load the logs until loading was in order at the municipal dock. With respect to the disposition by Ultican of the money delivered to his office by Anderson, there is only Ultican’s testimony. He has testified that he made a proposition to petitioner in the early part of 1937 to the effect that he would provide funds to petitioner as a contribution to the union which he could use for unemployed members of the union, if petitioner would use his influence to keep away obstructions to the loading of the ships; that petitioner told him that he thought “things could be kept smooth”; that an amount was agreed upon to be paid over a certain period of time provided there was no trouble; and, finally, that he gave the envelopes to petitioner. Ulti-can’s testimony is emphatic. He testified categorically, “I gave Mr. Law the envelopes.” “It wasn’t given to anybody else.” Anderson testified that Ultican told him that the money was to be given to petitioner and that the arrangements were to be made through petitioner, who was dealing with other union officials. The problem plainly requires the selection of one of two witnesses as the one whose testimony must be accepted to be true and controlling, each one having given testimony which contradicts the other. Ultican has testified that he gave envelopes to petitioner, and the record establishes that the envelopes contained the money. Petitioner has testified that he did not receive envelopes or money from Ultican. If the credibility of both witnesses was on an absolute parity, if there was no impairment of the credibility of the testimony of petitioner, there would be reason to hold that petitioner had gone as far as he is required in denying the receipt of the money, and, lacking more evidence to support respondent, the respondent’s determination of the tax deficiency might not be sustained. But the situation here is one in which there is more reason for believing Ultican than for believing petitioner in the matter of weighing the testimony of one against the other. There is evidence in this record that prior to 1937 petitioner was convicted of the crime of burglary and served a term in the Oregon State Penitentiary at Salem, Oregon. Under statute, the proceedings of this Court must be conducted in accordance with the rules of evidence applicable in courts of equity of the District of Columbia. See section 907 (a), Revenue Act of 1924, as added by section 1000 of the Revenue Act of 1926, as amended by section 601 of the Revenue Act of 1928. It is provided in the District of Columbia Code, 1940 Edition, Title 14-305 [9:12], that conviction of a crime does not make a witness incompetent to testify, but the fact of such conviction may be given in evidence to affect his credibility as a witness, either upon cross-examination of the witness or by evidence aliunde. The testimony of the petitioner, therefore, must be given less weight in the fine weighing of Ultican’s testimony and his testimony. Circumstances may be given some weight. There is the circumstance that, in fact, all of the cargoes of the Exportation Co. were loaded. That which was stated to be the object of the transaction was achieved. Upon due consideration it can not be found as a fact that petitioner did not receive the $6,500. The doubts must be resolved against petitioner. Mammoth Oil Co. v. United States, 275 U. S. 13; Pennsylvania Railroad Co. v. Chamberlain, 288 U. S. 333, 339. It can not be held that petitioner has' succeeded in overcoming the correctness of respondent’s determination of a liability for the tax deficiency. That determination of respondent is sustained. It follows that the assessment of a 25 percent penalty for failure to file an income tax return is sustained. With respect to the fraud penalty, respondent proceeded to carry the burden of proof upon him in this issue. He has made his case through the testimony of Ultican, Anderson, Stallard, and Herber. Some of these witnesses were reluctant from the beginning to give any information about the transaction to the Government, as the testimony of Hamer shows. It was necessary for a United States attorney to call them before a grand jury. We find no reason in the record before us for doubting any of these witnesses. Their testimony does not leave any doubt, standing alone, and petitioner did not succeed in disproving any of their testimony. It can not be said that respondent has not met the burden of proof upon him under this issue. Accordingly, respondent’s assessment of the fraud penalty is sustained. Decision will be entered for the respondent.