T.C. Memo. 2020-96

UNITED STATES TAX COURT

REBECCA L. BETHUNE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10198-17.                    Filed June 30, 2020.

In 2014 P was the noncustodial parent of two children. The custodial parent was their father, C. P and C each filed a timely 2014 Federal income tax return claiming the two children as dependents. No Form 8332, "Release/Revocation of Release of Claim to Exemption for Child by Custodial Parent", was attached to P's return. In July 2015 P and C jointly proposed a family court order that stated that the children "will continue to be claimed by Mother/plaintiff (as prior to 2014 tax year)", and each signed a statement that the statements in the proposed order "are true and accurate".

R examined P's 2014 return. P provided C's written statement, but R nonetheless proposed disallowance of the dependency exemption deductions, child tax credit, and head-of-household ("HOH") filing status. R suggested that P obtain a Form 8332 signed by C for 2014. C signed the form, and P produced it to the IRS. However, C did not file an amended return disclaiming his previous claim of the children as dependents.

[*2]      Held:  Since P did not attach to her return any Form 8332 or equivalent release, P is not entitled under I.R.C. sec. 152(e)(2)(A) to claim the dependency exemption deduction or the child tax credit.

     Held, further:  P is not entitled to the HOH filing status under I.R.C. sec. 2(b)(1).

Rebecca L. Bethune, for herself.

Michael E. D'Anello, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, Judge:  The Internal Revenue Service (IRS) determined a deficiency of $4,377 in the 2014 Federal income tax of petitioner, Rebecca L. Bethune.  Ms. Bethune petitioned this Court, pursuant to section 6213(a),[1] for redetermination of the deficiency.  The issues for decision are whether Ms. Bethune is entitled to (1) a dependency exemption deduction for two of her children under section 151(c), (2) a child tax credit for those children under section 24(a), and (3) head-of-household ("HOH") filing status under section 2(b)(1).  On these issues we hold for the IRS.

---

[1]Unless otherwise indicated, all citations of sections refer to the Internal Revenue Code (26 U.S.C.) in effect for the tax year at issue, and all citations of Rules refer to the Tax Court Rules of Practice and Procedure.

[*3]                       FINDINGS OF FACT

Ms. Bethune resided in Massachusetts when she filed her petition.

Ms. Bethune's children

Ms. Bethune married Timothy Kirby in October 2001.  Together they had

four daughters.  The two older daughters, Christine and Katherine, are no longer

minors.  The two younger daughters were minors at the time of the trial, and we

therefore refer to them by their initials as N.K. and C.K.  It is the two younger

daughters for whom the status as dependents is in dispute.

Divorce and custody

Ms. Bethune and Mr. Kirby divorced in February 2006.  Their original

divorce judgment did not indicate who would claim dependency exemptions for

the four girls for Federal income tax purposes.  Since 2009 Mr. Kirby has had

primary physical custody of N.K. and C.K.  Ms. Bethune concedes that in 2014

(the year at issue) she did not have physical custody of either N.K. or C.K.

2014 tax returns

Ms. Bethune timely filed her 2014 income tax return.  On that return she

claimed HOH filing status and claimed dependency exemptions and child tax

credits for both N.K. and C.K.  Ms. Bethune signed and dated her 2014 return by

hand and filed it in paper form, not electronically.  When she filed that 2014 return

**[*4]** in early 2015, she did not attach to it Form 8332, "Release/Revocation of Release of Claim to Exemption for Child by Custodial Parent", or any other written declaration signed by Mr. Kirby stating that he would not claim N.K. and C.K. as dependents for 2014.

Mr. Kirby timely filed his own 2014 income tax return, and on it he claimed both N.K. and C.K. as dependents.

Neither Ms. Bethune nor Mr. Kirby ever filed an amended return for 2014.

The July 2015 court order

On July 14, 2015--several months after Ms. Bethune and Mr. Kirby had filed their 2014 returns--the district court in Bangor, Maine, issued an order modifying the parental rights and responsibilities of Ms. Bethune and Mr. Kirby. Their names are typed at the bottom of the one-page order, and the order is in the form of a request by them that the court agree to its stated "changes" in the terms of a prior order, and it reflects that Ms. Bethune and Mr. Kirby agreed to those changes. The July 2015 order addressed various topics (including "Parental Rights and Responsibilities"; "Primary Residence of Children"; "Parent/Child Contact"; "Child Support"; "Medical Insurance for Children"; and "Uninsured Medical, Dental, Optical, Hospital and Prescription Expenses of Children") and--especially relevant here--"Tax Exemption". The order provided:

**[\*5]**  N[.K.] and C[.K.] will continue to be claimed by Mother/plaintiff (as prior to 2014 tax year)

Katherine and Christine will continue to be claimed by Father/defendant (as prior to 2014 tax year)

Starting tax year 2015, Christine and N will be claimed by Mother/Plaintiff.

Starting tax year 2015, C and Katherine will be claimed by Father/defendant.

Thus, the July 2015 order provided for future treatment ("will continue", "will be claimed") and referred to years "[s]tarting tax year 2015" and years "prior to 2014", but it made no explicit provision for the 2014 year itself, which was a past year for which Ms. Bethune and Mr. Kirby had both already filed their returns.

Ms. Bethune and Mr. Kirby each signed separate pages that were attached to the proposed order, and each signature (at the top of the page) was notarized with a statement underneath the signature that, on Mr. Kirby's page, reads as follows:

> On this day personally appeared the above-named Timothy K. Kirby and acknowledged and made oath that the above statements subscribed by him are true and accurate to the best of his personal knowledge, information and belief, and insofar as based on information and belief, he believes them to be true.

> Before me,

    7/9/15                          Jennifer L. Clarke     
Dated                                  NOTARY PUBLIC

[*6] IRS examination

The IRS began examining Ms. Bethune's 2014 income tax return in the fall of 2016. In October 2016 (while the examination was ongoing) Ms. Bethune first provided the July 2015 order and statements to the IRS.

In February 2017 an IRS employee told Ms. Bethune that the July 2015 order was insufficient to show she was entitled to the dependency exemptions for N.K. and C.K., because the IRS questioned its authenticity. The employee suggested that Ms. Bethune needed a Form 8332 signed by Mr. Kirby. Before that time, Ms. Bethune had not heard of Form 8332.

Form 8332

Starting in February 2017, Ms. Bethune told Mr. Kirby that she needed him to sign a Form 8332. On April 12, 2017, she presented to him for signing a Form 8332 that stated: "I agree not to claim an exemption for * * * [N.K. and C.K.] for the tax year 2014." Mr. Kirby signed the form, dated it "4/12/17", and handed it to her.[2] (However, despite purporting on Form 8332 to "agree not to claim an exemption" for the two daughters, Mr. Kirby had in fact already claimed

_____

[2]Mr. Kirby denies that he signed the form and disavows the signature that appears on it, but Ms. Bethune's detailed account of the circumstance of the signing persuades us that he probably did sign it, as she says.

**[*7]** those exemptions on the 2014 return he had filed two years earlier, and he did not ever file with the IRS an amended return disclaiming those exemptions.)

SNOD and petition

By March 31, 2017, the IRS had not received Form 8332 from Ms. Bethune, and on that date the IRS issued to Ms. Bethune a statutory notice of deficiency ("SNOD") for 2014. That SNOD determined that Ms. Bethune was not allowed HOH filing status nor dependency exemptions and child tax credits for N.K. and C.K.

On May 1, 2017, Ms. Bethune sent to the IRS by telefacsimile the Form 8332 that Mr. Kirby had signed.[3] On the same date, she timely mailed to the Court her petition commencing this case and challenging the SNOD. (To the petition she also attached a copy of the signed Form 8332.)

Ms. Bethune's case was tried in Boston, Massachusetts, in October 2018. The Commissioner filed his post-trial brief as ordered, but Ms. Bethune did not file a brief.

---

[3]A letter from the IRS attached to Ms. Bethune's amended petition, whose authenticity the Commissioner did not dispute, shows that IRS examination personnel received her fax. The letter states: "We received your response dated 05/02/2017. If we can't complete our review of the information you sent us by 06/05/2017, we will contact you again to provide a date when you can expect our response. You don't need to respond to this letter; however, if you have questions or need additional information, you can contact the person listed above."

[*8]                                OPINION

I.      Burden of proof

        A.      General rule

The IRS's determinations are presumed correct, and a taxpayer generally bears the burden to prove her entitlement to any deduction, credit, or other tax benefit that she claims. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer must satisfy the specific requirements for any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Where the evidence presented at trial is insufficient to support a finding that a particular item should be allowed, we must sustain the IRS's determinations and disallow the item.

        B.      Witness credibility

We observe the candor, sincerity, and demeanor of a witness in order to evaluate his testimony. See, e.g., Gerdau Macsteel, Inc. v. Commissioner, 139 T.C. 67, 155 (2012). "We will not accept the testimony of witnesses at face value if we find that the outward appearance of the facts in their totality conveys an impression contrary to the spoken word." Neonatology Assocs. P.A. v. Commissioner, 115 T.C. 43, 84 (2000), aff'd, 229 F.3d 221 (3d Cir. 2002). This is all the more true when witnesses contradict one another. See Law v.

**[\*9]** <u>Commissioner</u>, 2 T.C. 623, 628 (1943) ("The problem plainly requires the selection of one of two witnesses as the one whose testimony must be accepted to be true and controlling, each one having given testimony which contradicts the other").

## II.     The dependency exemption deduction

### A.     The provisions of section 152

For the year 2014 an individual is allowed a deduction for an exemption for "each individual who is a dependent (as defined in section 152) of the taxpayer for the taxable year." Sec. 151(c). Section 152(a) defines the term "dependent" to include "a qualifying child". Generally, a "qualifying child" must: (1) bear a specified relationship to the taxpayer (e.g., be a child of the taxpayer), (2) have the same principal place of abode as the taxpayer for more than one-half of such taxable year, (3) meet certain age requirements, (4) not have provided over one-half of such individual's support for the taxable year at issue, and (5) not have filed a joint return for that year. Sec. 152(c)(1). Under those provisions Ms. Bethune could not claim her children as dependents for 2014 because, as she admits, they did not share the same place of abode with her for more than one-half of the year.

**[*10]** However, in the case of divorced parents, special rules determine which parent may claim a dependency exemption deduction for a child. See sec. 152(e); Espinoza v. Commissioner, T.C. Memo. 2011-108; cf. sec. 152(c)(4). Pursuant to section 152(e), when certain criteria are met, a child may be treated as a qualifying child of the noncustodial parent (here, Ms. Bethune) rather than of the custodial parent (Mr. Kirby). Sec. 152(e)(1); 26 C.F.R. sec. 1.152-4, Income Tax Regs. N.K. and C.K. could be the qualifying children of Ms. Bethune, under section 152(e)(1) and (2), if--

- the "child receives over one-half of the child's support during the calendar year from the child's parents * * * who are divorced * * * under a decree of divorce", sec. 152(e)(1)(A);

- such child was "in the custody of 1 or both of the child's parents for more than one-half of the calendar year", sec. 152(e)(1)(B);

- "the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year", sec. 152(e)(2)(A); and

- "the noncustodial parent attaches such written declaration to the noncustodial parent's return" for the appropriate taxable year, sec. 152(e)(2)(B).

The IRS's prescribed means for the noncustodial parent to make this declaration is Form 8332, on which the relevant statement is "I agree not to claim". A noncustodial parent may rely on an alternative document, provided that

[*11] it "conform[s] to the substance" of Form 8332.  26 C.F.R. sec. 1.152-4(e)(1)(ii).  Form 8332 requires a taxpayer to furnish:  the name of the child; the name and Social Security number of the noncustodial parent claiming the dependency exemption deduction; the Social Security number of the custodial parent; the signature of the custodial parent; the date of the custodial parent's signature; and the year(s) for which the claims were released.  For the year at issue here, a signed judgment copy of a court order cannot satisfy section 152(e)(2).  See 26 C.F.R. sec. 1.152-4(e)(1)(ii) ("A court order or decree or a separation agreement may not serve as a written declaration").

Whether made on Form 8332 or by an equivalent document, the basic element necessary for satisfying section 152(e)(2)(A) is a custodial parent's declaration that (in the words of the statute) he "will not claim" the child as a dependent for a taxable year.

B.      The lack of a declaration

The Commissioner contends that Ms. Bethune's claim in this case fails because she is unable to show compliance with the third and fourth requirements stated above.  That is, the Commissioner contends that Mr. Kirby did not ever sign a declaration that he "will not claim such child as a dependent" and that Ms. Bethune did not "attach[] such written declaration to" her return.

**[\*12]** Ms. Bethune proffers two documents that, she contends, satisfy section 152(e)(2). We consider each in turn.

### 1. Mr. Kirby's July 2015 document

Ms. Bethune provided to IRS examination personnel Mr. Kirby's statement, signed and notarized on July 9, 2015, which she contends satisfies section 152(e)(2). The Commissioner contends that the document is inadequate for two procedural reasons that we need not address,[4] because we sustain a third argument he makes.

In that document Mr. Kirby did not make the statement required by the statute--i.e., that he "will not claim" the child as a dependent for 2014. Mr. Kirby did swear "that the above statements subscribed by him are true and accurate", and the "above statements" included that "N and C will continue to be claimed by Mother/plaintiff (as prior to 2014 tax year)". But there are two defects in the statement:

---

[4]First, the Commissioner cites 26 C.F.R. sec. 1.152-4(e)(1)(ii), Income Tax Regs. ("A written declaration * * * must be a document executed for the sole purpose of serving as a written declaration under this section. A court order or decree * * * may not serve as a written declaration"), but Mr. Kirby's statement is arguably a document distinct from the order itself, and its purpose is unclear. Second, the Commissioner argues that the statement was not "attached" to Ms. Kirby's return. See infra pt. II.B.2.

**[\*13]** First, Mr. Kirby's July 2015 document makes no undertaking about what Mr. Kirby will claim as to N.K. and C.K. It states that Ms. Bethune "will" claim N.K. and C.K., but it does not state that Mr. Kirby will <u>not</u> claim them. In fact, Mr. Kirby <u>did</u> claim them, and in that statement he did not undertake to do otherwise nor to undo what he had previously done.

Second, Mr. Kirby's document executed in July 2015 makes no undertaking about what Mr. Kirby will claim for 2014. The document makes assertions about what "<u>will continue to be</u> claimed" and what "<u>will be</u> claimed" on tax returns, but those forward-looking assertions made in July 2015 do not address the previous year of 2014. <u>Cf.</u> 26 C.F.R. sec. 1.152-4(e)(1)(i) ("A written declaration that specifies all future years is treated as specifying <u>the first taxable year after</u> the taxable year of execution" (emphasis added)). The document makes assertions about claims made "prior to 2014 tax year", but those do not address 2014.

Mr. Kirby's July 2015 statement simply falls short of what section 152(e)(2) requires.

### 2. The April 2017 Form 8332

IRS personnel examining her 2014 return told Ms. Bethune in February 2017 that she needed a Form 8332 signed by Mr. Kirby, and she produced it to them two months later (shortly after they had issued the SNOD). Ms. Bethune

[*14] contends that this form satisfied section 152(e)(2).  The Commissioner disputed the authenticity of the Form 8332 as a matter of fact, but we have found that Mr. Kirby did sign the form as alleged.  Ms. Bethune has thus prevailed on that dispute of fact.

However, the Commissioner raises an additional argument against the Form 8332:  Section 152(e)(2)(B) provides that the requirements are satisfied if "the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year."  The Commissioner contends that, for purposes of that statute, Ms. Bethune did not "attach[] such written declaration [i.e., the Form 8332] to * * * [her] return" for 2014.

"Attach" has an evident literal meaning, see Armstrong v. Commissioner, 139 T.C. 468, 479 (2012) (Goeke, J., concurring), aff'd, 745 F.3d 890 (8th Cir. 2014), but that literal meaning has become sometimes difficult to vindicate when construing section 152(e) in the context of its practical administration by the IRS.  For example, where returns are filed electronically, see id. at 481-508 (Holmes, J., dissenting), a more figurative meaning must be invoked.  Moreover, in January

[*15] 2017 the Government proposed[5] regulations that allow submission, "during an examination", of a Form 8332 that was not literally attached to the return:

> A noncustodial parent may submit a copy of the written declaration to the IRS during an examination to substantiate a claim to a dependency exemption for a child. A copy of a written declaration * * * provided during an examination, will not meet the requirement of this paragraph (e) if the custodial parent signed the written declaration after the custodial parent filed a return claiming a dependency exemption for the child for the year at issue, and the custodial parent has not filed an amended return to remove that claim to a dependency exemption for the child.

Sec. 1.152-5(e)(2)(i), Proposed Income Tax Regs., 82 Fed. Reg. 6387 (Jan. 19, 2017). In the second sentence quoted above, this proposed regulation qualifies the allowance of the Form 8332 submitted during examination by stating that the form will be ineffective if it would allow the noncustodial parent to get the tax benefit that the custodial parent had already obtained and would not relinquish. Like the

---

[5]In his post-trial brief, the Commissioner explains the effect of these (merely) proposed regulations as follows:

> The proposed regulation is applicable to taxable years beginning after the date the regulations are published as final regulations in the Federal Register. 82 Fed. Reg. 6370, 6388 (proposed Jan. 19, 2017) (to be codified at Treas. Reg. § 1.152-5(e)(2)(i)). Pending the issuance of the final regulations, taxpayers may choose to apply the proposed regulations in any open taxable years. Id. at 6377. Proposed regulations are not binding on the Court and are generally given no greater weight than a litigation position though the Court may rely on them for guidance. [Citations omitted.]

**[*16]** provisions for electronic filing, that rule does not seem to employ a plain or literal meaning of the word "attached".

However, the provisions for electronic filing are not applicable here, where Ms. Bethune filed a paper return, and the provisions for submission during examination are not applicable here, where the custodial parent never relinquished the dependency exemption deduction. The applicable, operative rule is that Ms. Bethune had to "attach" the Form 8332 to her return, but she did not do so. Consequently, she is not entitled to the dependency exemption deductions for N.K. and C.K.

## III. Child tax credit

A taxpayer is entitled to a child tax credit for "each qualifying child", as defined in section 152, who has not reached the age of 17 and for whom the taxpayer is allowed a dependency exemption deduction under section 151. Sec. 24(a), (c)(1). Given our determination that under section 152 neither N.K. nor C.K. is a "qualifying child" of Ms. Bethune for the year at issue and that Ms. Bethune is not allowed the dependency exemption deduction for either of them, it follows that Ms. Bethune is not entitled to a child tax credit for N.K. or C.K. for that year.

**[*17]** IV.    Head-of-household filing status

Section 1 of the Code provides different tax rates for different taxpayers, and section 1(b) provides relatively favorable rates for a "head of a household (as defined in section 2(b))". Section 2(b) in turn defines "head of a household", and one of the criteria for that status is that the taxpayer "maintains as his home a household which constitutes for more than one-half of such taxable year the principal place of abode, as a member of such household, of * * * (i) a qualifying child of the individual (as defined in section 152(c), determined without regard to section 152(e))". Sec. 2(b)(1)(A)(i). Under section 152(c)(1)(B), a "qualifying child" must have "the same principal place of abode as the taxpayer for more than one-half of such taxable year"; and by providing that the child's status is determined "without regard to section 152(e) ["Special Rule for Divorced Parents, Etc."]", section 2(b) provides that a noncustodial parent cannot meet the "principal place of abode" requirement by obtaining a declaration from the custodial parent. Rather, HOH status depends on having a qualifying child actually sharing the taxpayer's place of abode for more than one-half of the year.

Ms. Bethune admits, however, that both N.K. and C.K. resided with their father for more than one-half of 2014. Consequently, no qualifying child lived

**[*18]** with Ms. Bethune in her place of abode for more than one-half of that year, so she is not entitled to HOH filing status.

In view of the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.